# EXHIBIT A

Court of Common Pleas of Philadelphia
County Trial Division

# Civil Cover Sheet

| | For Office of Judicial Records Use Only (Docket Number) |
|---|---|

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Emily Trias, as Parent and Natural Guardian of M.T. | QVC, Inc. |

*Filed and Attested by the Office of Judicial Records 11 FEB 2020 02:01 pm A. SILIGRINI*

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 304 4th Street North, Estelline, South Dakota 57234 | 1200 Wilson Drive, West Chester, PA 19380 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal |
| | | [ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less | [ ] Arbitration | [ ] Mass Tort | [ ] Minor Court Appeal | [ ] Settlement |
| [X] More than $50,000.00 | [X] Jury | [ ] Savings Action | [ ] Statutory Appeals | [ ] Minors |
| | [ ] Non-Jury | [ ] Petition | [ ] Commerce (Completion of Addendum Required) | [ ] W/D/Survival |
| | [ ] Other: _____ | | | |

CASE TYPE AND CODE (SEE INSTRUCTIONS)

2P- Product Liability

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| | Yes      No |
| _____ | [ ]      [ ] |
| _____ | [ ]      [ ] |
| _____ | [ ]      [ ] |

TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: Emily Trias
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Thomas R. Kline | Kline & Specter PC 1525 Locust St., 19th FL. Phialadelphia, PA 19102 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215) 772-1000 | (215) 772-1359 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 28895 | Tom.Kline@Klinespecter.com |

| SIGNATURE | DATE |
|---|---|
| Thomas Kline | Tuesday, February 11, 2020, |

Case ID: 200201197

**COMPLETE LIST OF DEFENDANTS:**

    1. QVC, INC.
       1200 Wilson Drive,
       West Chester, PA
       19380

**KLINE & SPECTER, P.C.**
By:     THOMAS R. KLINE, ESQ.
          PATRICK FITZGERALD, ESQ.
          I.D. NOs. 28895/320051
Tom.Kline@KlineSpecter.com;
Patrick.Fitzgerald@KlineSpecter.com
1525 Locust Street, 19th Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000

**PANISH SHEA & BOYLE LLP**
By:     BRIAN PANISH, ESQ. (to be admitted *pro hac vice*)
          ADAM SHEA, ESQ. (to be admitted *pro hac vice*)
panish@psblaw.com
shea@psblaw.com
11111 Santa Monica Blvd, Suite 700
Los Angeles, CA 90025
(310) 477-1700

**SHOOP, A PROFESSIONAL LAW CORPORATION**
By:     DAVID R. SHOOP, ESQ. (to be admitted *pro hac vice*)
          THOMAS S. ALCH, ESQ. (to be admitted *pro hac vice*)
david.shoop@shooplaw.com
thomas.alch@shooplaw.com
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90212
(310) 620-9533
*Attorneys for Plaintiff*

| | |
|---|---|
| **EMILY TRIAS, as Parent and Natural Guardian of M.T.**<br>304 4th Street North,<br>Estelline, South Dakota 57234<br><div align="right">*Plaintiff*</div><br>v. | **COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**<br><br>**FEBRUARY TERM, 2020**<br><br>**NO.:** |
| **QVC, INC.**<br>1200 Wilson Drive,<br>West Chester, Pennsylvania 19380<br><div align="right">*Defendant*</div> | **CIVIL ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Case ID: 200201197

# CIVIL ACTION COMPLAINT

## <u>NOTICE TO PLEAD</u>

| <u>NOTICE</u> | <u>ADVISO</u> |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. You should take this paper to your lawyer at once. If you do not have a lawyer, go to or telephone the office set forth below to find out where you can get legal help. | Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. Lleve esta demanda a un abogado inmediatamente, si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio, vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal. |
| Lawyer Referral Service<br>Philadelphia Bar Association<br>1101 Market Street, 11th Floor<br>Philadelphia, PA 19107<br>(215) 238-6338 | Lawyer Referral Service<br>Philadelphia Bar Association<br>1101 Market Street, 11th Floor<br>Philadelphia, PA 19107<br>(215) 238-6338 |

Case ID: 200201197

**KLINE & SPECTER, P.C.**
By:     THOMAS R. KLINE, ESQ.
          PATRICK FITZGERALD, ESQ.
          I.D. NOs. 28895/320051
Tom.Kline@KlineSpecter.com;
Patrick.Fitzgerald@KlineSpecter.com
1525 Locust Street, 19th Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000

**PANISH SHEA & BOYLE LLP**
By:     BRIAN PANISH, ESQ. (to be admitted *pro hac vice*)
          ADAM SHEA, ESQ. (to be admitted *pro hac vice*)
panish@psblaw.com
shea@psblaw.com
11111 Santa Monica Blvd, Suite 700
Los Angeles, CA 90025
(310) 477-1700

**SHOOP, A PROFESSIONAL LAW CORPORATION**
By:     DAVID R. SHOOP, ESQ. (to be admitted *pro hac vice*)
          THOMAS S. ALCH, ESQ. (to be admitted *pro hac vice*)
david.shoop@shooplaw.com
thomas.alch@shooplaw.com
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90212
(310) 277-1700
*Attorneys for Plaintiff*

| | |
|---|---|
| **EMILY TRIAS, as Parent and Natural Guardian of M.T., a minor**<br>304 4TH Street North<br>Estelline, South Dakota 57234<br><div align="right">*Plaintiff*</div><br>v.<br><br>**QVC, INC.**<br>1200 Wilson Drive,<br>West Chester, Pennsylvania 19380<br><div align="right">*Defendant*</div> | **COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**<br><br>**FEBRUARY TERM, 2020**<br><br>**NO.:**<br><br>**CIVIL ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

3

Case ID: 200201197

## CIVIL ACTION COMPLAINT

Emily Trias, as Parent and Natural Guardian of M.T., a minor, by and through her undersigned attorneys, hereby demands damages from Defendant in an amount in excess of the local arbitration limits, exclusive of interest, costs and damages for prejudgment delay, upon the causes of action set below:

1.      Emily Trias is an adult citizen and resident of the State of South Dakota, residing therein at 304 4th Street North, Estelline, South Dakota, 57234.

2.      Emily Trias is the Parent and Natural Guardian of M.T., a minor.

3.      Plaintiff, M.T. (hereinafter "PLAINTIFF") is a minor, date of birth xx/xx/2015, and is bringing this action by and through his mother and natural guardian, Emily Trias.

4.      M.T. is and was at all times relevant herein a resident of Estelline, South Dakota.

5.      Defendant, QVC, Inc. (hereinafter "QVC" or "Defendant"), is and was at all times relevant herein, a Delaware corporation with its principal place of business located at 1200 Wilson Drive, West Chester, Chester County, Pennsylvania 19380 and is a registered corporation with the Department of State of the Commonwealth of Pennsylvania.

6.      At all times relevant herein, Defendant QVC acted by and through its duly-authorized authorized actual, apparent, and/or ostensible agents, servants, and/or employees, who were acting within the course and scope of their employment, service, and/or agency with Defendant QVC.  The identities of these authorized, actual, and/or ostensible agents, servants, and/or employees, are known to Defendant and currently unknown to PLAINTIFF, and include, but is not limited to, all those responsible for the design, development, testing, assembling, manufacturing, marketing, sale, and/or distribution of subject Magnetic Trivets.

Case ID: 200201197

7. At all times relevant herein, Defendant QVC conducted regular, systematic, substantial, and continuous business in the Commonwealth of Pennsylvania and in Philadelphia County.

8. This Court has jurisdiction over this action pursuant to 42 Pa. C.S. § 5301 and this action is therefore proper in this Court.

9. Venue is proper in Philadelphia County pursuant to Pa. R.C.P. Rules 1006(c) and 2179(a), among others, QVC regularly conducts substantial business in Philadelphia County, including selling, marketing, importing, exporting, shipping through the ports, shipping through the airports, conducting commerce, and employing personnel.

## NATURE OF THE CASE

10. QVC, Inc. (hereinafter "QVC") was and now is engaged in the business of researching, manufacturing, fabricating, designing, testing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising Magnetic Trivets that contained high power, rare earth, neodymium magnets.

11. The Magnetic Trivets were often sold by Defendant as part of a package called the "Copper Chef 10-Piece Cerami-Tech Non-Stick Cookware Set."

12. From approximately October of 2017 through October of 2018, Defendant, sold approximately 350,000 Magnetic Trivets (hereinafter "MAGNETIC TRIVETS") to consumers, including families with small children.

13. Defendant, with a conscious and reckless disregard for the safety of others, designed, manufactured, tested marketed and/or sold the MAGNETIC TRIVETS, which were

5

dangerous and defective in that they contained powerful, rare earth magnets, they failed to restrict access to high-power magnets, failed to contain appropriate warnings or instructions, and failed to adequately protect and hold the rare earth magnets.

14.     The MAGNETIC TRIVETS were covered on top with soft, orange silicone material.

15.     Hidden underneath the MAGNETIC TRIVETS were four (4) high-power "rare earth" (neodymium) magnets, each the size of a Cheerio.

16.     These magnets were approximately eighteen (18) times more powerful than traditional magnets and easily accessible to children due to the defective design of the MAGNETIC TRIVETS.

17.     The MAGNETIC TRIVETS, being a household kitchen product, were to be kept in family kitchens where children eat.

18.     The MAGNETIC TRIVETS are toy-like in that they are a small, rubbery object that can be easily gripped by a child and have an attractive, colorful flower-like design.

19.     The magnets contained within the MAGNETIC TRIVETS were covered only by perforated soft silicone that easily fell off, allowing the unreasonably dangerous high-powered magnets to become loose.

20.     Once found by a child, the magnets are easily ingested.

21.     The subject MAGNETIC TRIVETS with the hidden high-power magnets are shown below:

6

Case ID: 200201197





22.     Defendant, with a conscious and reckless disregard for the safety of others failed to warn consumers, intended users and reasonably foreseeable users of the non-obvious hidden dangers inherent in the defective MAGNETIC TRIVETS.

7

Case ID: 200201197

23.     The MAGNETIC TRIVETS did not contain any warnings that there were powerful magnets inside that could be easily accessed and/or removed by children.

24.     There were no warnings that the MAGNETIC TRIVETS should be kept out of the reach of children and not used and/or handled by children.

25.     Because the MAGNETIC TRIVETS were sold without any warnings relative to these dangerous and concealed high-power magnets, Emily Trias was unaware that the subject MAGNETIC TRIVETS were unsafe to be used by children, that the magnets were easily accessible to children, and that the MAGNETIC TRIVETS should be kept out of reach of children.

26.     Given the toy-like appearance of the MAGNETIC TRIVETS and the lack of warnings instructing parents to keep the MAGNETIC TRIVETS out of reach of children, it was entirely foreseeable that a child would handle, gain access to, or use the MAGNETIC TRIVETS.

27.     Given the attractive design of the MAGNETIC TRIVETS and the lack of warnings, it was not apparent that a young child was not an intended user of the MAGNETIC TRIVETS.

28.     In early 2018, PLAINTIFF's grandmother purchased the Copper Chef 10-Piece Cerami-Tech Nonstick Cookware Set, which included the subject MAGNETIC TRIVETS, from Defendant, as a gift for PLAINTIFF's family.

29.     PLAINTIFF and his family used the subject MAGNETIC TRIVETS in their intended and/or reasonably foreseeable manner.

30.     In late March of 2018, PLAINTIFF, two-and-a-half years old at the time, was caused to ingest the magnets contained within the MAGNENTIC TRIVETS and began to suffer from persistent vomiting.

31.     After two visits to Pediatric Urgent Care, an abdominal x-ray taken on March 28, 2018 showed that PLAINTIFF had a foreign body in his right lower quadrant.

8

Case ID: 200201197

32.     PLAINTIFF was taken for emergency exploratory laparotomy surgery that same day.

33.     Intraoperatively, the pediatric surgeon found "a stack of 4 round, flat magnets."

34.     Each magnet was in a separate loop of small intestine, which then attracted to each other, clamping down PLAINTIFF'S intestinal tissue, creating pressure necrosis (tissue death) to four (4) separate areas of PLAINTIFF'S small intestine resulting in four (4) separate perforations.

35.     There was a perforation in the distal small bowel on the antimesenteric surface, another loop with through and through holes at the mesenteric border and a small hole in the anterior wall of the cecum.

36.     Because some orange silicone that was on the magnets ended up in PLAINTIFF'S stool , the magnets were easily identifiable as the high-powered, rare earth magnets from the subject MAGNETIC TRIVETS that the minor PLAINTIFF ingested.

37.     As a direct and proximate result of the defective MAGNETIC TRIVETS, and the failures to warn by Defendant, PLAINTIFF has so far undergone five (5) open abdominal surgeries, endured a greater than one-month PICU hospitalization, mechanical ventilation, collapsed lungs, surgical placement of chest tubes, TPN line placement and feeding through his superior vena cava, and cognitive delay.

38.     As a direct and proximate result of the defective MAGNETIC TRIVETS, PLAINTIFF will suffer future damages including but not limited to pain and suffering, future medical care and treatment, future loss of earnings, and other economic losses.

**FACTUAL BACKGROUND**

39.     In January, 2007, the Consumer Product Safety Commission (hereinafter "CPSC") issued a Safety Alert entitled: "HIGH-POWERED MAGNETS AND CHILDREN A DEADLY

Case ID: 200201197

MIX," stating that "Toddlers, tweens and teens have suffered severe injuries or death after ingesting multiple magnets." The CPSC further warned that "Swallowed magnets can attract through intestinal tissue, clamping together and causing tissue injury or tissue death. Magnets can also burrow through intestinal walls, creating blockages or life-threatening infections. Many children have been rushed in to surgery to remove multiple magnets from their gastrointestinal tracts and a 19-month-old girl tragically died after ingesting magnets."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Safety Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said Safety Alert.

40.    On January 18, 2007, the CPSC issued a Recall Alert for MagnaBlocks warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

41.    On February 15, 2007, the CPSC issued a Recall Alert for Link-N-Lite Magnetic Puzzles warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others,

10

Case ID: 200201197

failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

42.     In April, 2007, the CPSC issued a Safety Alert entitled: "INGESTED MAGNETS CAN CANUSE SERIOUS INTESTINAL INJURIES." The CPSC warned that "Small magnets… can kill children if two or more are swallowed." The CPSC stated that it "is aware of at least 33 cases of children being injured form ingesting magnets. A 20-month-old died, and at least 19 other children from 10 months to 11 years required surgery to remove ingested magnets." The CPSC further warned that: If two or more magnets or magnetic components or a magnet and another metal object (such as a small metal ball) are swallowed separately, they can attract to one another through intestinal walls. This traps the magnets in place and can cause holes (perforations), twisting and/or blockage of the intestines, infection, blood poisoning (sepsis), and death." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Safety Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said Safety Alert.

43.     On May 3, 2007, the CPSC issued a Recall Alert for IQ PreSchool Take-Apart Townhouse warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

Case ID: 200201197

44.     On August 14, 2007, the CPSC issued a Recall Alert for an Expanded Recall of Polly Pocket Play Sets warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  Additionally, the CPSC reported that "There had been three reports of serious injuries to children who swallowed more than one magnet. All three suffered intestinal perforations that required surgery."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

45.     On August 14, 2007, the CPSC issued a Recall Alert for Doggie Day Care Play Sets a warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

46.     On August 14, 2007, the CPSC issued a Recall Alert for Barbie and Tanner Magnetic Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of

Case ID: 200201197

others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

47.     On August 14, 2007, the CPSC issued a Recall Alert for Batman Magnetic Toy warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

48.     On October 27, 2007, the CPSC issued a Recall Alert for Magnetic Game Pieces sold with Cars Backpacks warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

49.     On January 23, 2008, the CPSC issued a Recall Alert for Battatt MagnaBild Magnetic Building Systems Additional Magnetic Figures Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers,

13

distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

50.     On February 22, 2008, the CPSC issued a Recall Alert Fun 'N Safe Magnetic Dart Boards warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

51.     On March 13, 2008, the CPSC issued a Recall Alert for MagnaBild Magnetic Figures Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

52.     On March 13, 2008, the CPSC issued a Recall Alert for Battatt Additional Magnetic Figures Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

Case ID: 200201197

53.    On March 17, 2008, the CPSC issued a Recall Alert for Magtastik and Magnetiks Jr. Pre School Toys, warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

54.    On March 17, 2008, the CPSC issued a recall Alert for MagnaMan Magnetic Figures Toys warning that: "Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

55.    On April 8, 2008, the CPSC issued a Recall Alert for Fun 'N Games Magnetic Dart Boards by Henry Gordy, warning that: Magnets found by young children can be swallowed or aspirated. If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

Case ID: 200201197

56.     On May 27, 2010, the CPSC issued a Recall Alert for Buckyballs High Powered Magnets Sets, warning that "If more than one magnet is swallowed, the magnets can attract each other and cause intestinal perforations or blockages, which can be fatal." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

57.     On November 21, 2011, the CPSC issued a Recall Alert for Jo-Ann Fabrics' Foam Pumpkin Turkey Craft Kit which contained magnets warning that: "when two or more magnets are swallowed, they can link together inside the intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

58.     On June 5, 2012, the North American Society for Pediatric Gastroenterology, Hepatology and Nutrition (hereinafter "NASPGHAN") gave a full day presentation to the Consumer Product Safety Commission entitled: "High-Powered Magnet Ingestions by Children." It was reported that: "Reports of neodymium magnetic ingestions surfaced in 2002. From 2003 to 2006, 20 cases of children with magnet ingestion and injury were reported by the Center for Disease Control. The U.S Consumer Products Safety Commission (USCPSC) issued a warning in 2007, after it documented one death of a child following ingestion of such magnets, as well as 33 other cases of injury. An informal survey of NASPGHAN members in April 2012 identified more

16

than 80 magnet ingestions, requiring 29 endoscopies, 27 surgeries, and 28 bowel perforations."
With a reckless indifference to the safety of others, Defendant recklessly disregarded this
presentation or, with a reckless indifference to the safety of others, failed as designers,
manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen
products to make itself aware of said presentation to the CPSC.

59.     On December 10, 2012, the CPSC issued a Recall Alert for Reiss Innovations High
Powered Magnet, warning that: "When two or more magnets are swallowed, they can link together
inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations,
sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With a
reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or,
with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers,
distributors, testers and marketers of consumer household and kitchen products to make itself
aware of said consumer product Recall Alert.

60.     On January 31, 2013, the CPSC issued a Recall Alert for Nanosphere Magnetic
Desk Toys, warning that: "If two or more magnets are swallowed, they can link together inside a
child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis
and death. Internal injury from magnets can pose serious lifelong health effects." With a reckless
indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a
reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors,
testers and marketers of consumer household and kitchen products to make itself aware of said
consumer product Recall Alert.

61.     On January 31, 2013, the CPSC issued a Recall Alert for SCS Direct Magnet Balls
Manipulative Magnet Sets, warning that: "When two or more magnets are swallowed, they can

Case ID: 200201197

link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

62.     On April 5, 2013, the CPSC issued a Recall Alert for ToysRUs Buckyballs High-Powered Magnet Sets, warning that: "When two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

63.     On April 5, 2013, the CPSC issued a Recall Alert for Overstock.com Buckyballs High-Powered Magnet Sets, warning that: "When two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

Case ID: 200201197

64.    On June 7, 2013, the CPSC issued a Recall Alert of High Powered magnets distributed with an Adobe Connect promotional package, warning that: "When two or more magnets are swallowed, they can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

65.    On April 6, 2014, the CPSC issued a Recall Alert of Rubber Ducky Magnets, warning that magnets "If swallowed, magnets can link together inside a child's intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

66.    On September 10, 2015, the CPSC issued a Recall Alert for Juratoys Fishing Games warning that: "the small magnet inside the worm can liberate. Swallowing multiple magnets can result in serious internal injury." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

19

67.      On August 4, 2016, the CPSC issued a Recall Alert for Cinmar Magnetic World Travel Maps, warning that: "when two or more magnets...are swallowed, they can link together inside the intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects."  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

68.      On August 5, 2016, the CPSC issued a Recall Alert for Disney's gadget Pencil Cases which contained two magnets, warning that: "[w]hen these two magnets are swallowed, they can link together inside a child's intestines and result in serious internal injuries." With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

69.      On March 29, 2017, the CPSC issued a Recall Alert for Target's Magnetic Tic-Tac-Toe games warning that: "when two or more magnets are swallowed, they can link together inside the intestines and clamp onto body tissues, causing intestinal obstructions, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects," in addition to being a choking hazard.  With a reckless indifference to the safety of others, Defendant recklessly disregarded this Recall Alert or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of said consumer product Recall Alert.

Case ID: 200201197

70.     In October, 2017, Defendant, with a reckless indifference to the safety of others, Defendant recklessly disregarded 2 prior CPSC Safety Alerts, 28 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of ingested magnets, or, with a reckless indifference to the safety of others, failed as designers, manufacturers, sellers, distributors, testers and marketers of consumer household and kitchen products to make itself aware of the 2 prior CPSC Safety Alerts, 28 prior CPSC Recall Alerts, the NASPGHAN presentation, and myriad medical articles regarding the dangers of ingested magnets, manufactured, fabricated, designed, tested, modified, labeled, assembled, distributed, offered for sale, supplied, sold, inspected, marketed, and advertised the MAGNETIC TRIVETS at issue with high power, rare earth, neodymium magnets.

71.     Defendant with a reckless indifference to the safety of others concealed four (4) high-powered rare earth magnets in each MAGNETIC TRIVET.  The two flower-shaped, orange MAGNETIC TRIVETS were made of a soft silicone material making the MAGNETIC TRIVET look like a play toy.

72.     Concealed inside the MAGETIC TRIVETS were four (4) high-powered magnets that were 18 times more powerful than traditional magnets, and easily accessible to children due to the design defective and negligent design of the MAGNETIC TRIVETS.

73.     Each of the four (4) magnets concealed inside the MAGETIC TRIVETS were the size and shape of a Cheerio.

74.     Defendant with a reckless indifference to the safety of others, failed to warn that the MAGNETIC TRIVETS contained four (4)  high-powered easily removable and ingestible magnets.

Case ID: 200201197

75.     Defendant with a reckless indifference to the safety of others, designed, manufactured, advertised marketed and/or sold the subject MAGNETIC TRIVETS at issue with defects that that provided children with direct access to these dangerous magnets, knowing full well that the MAGNETIC TRIVETS would be placed in the family kitchen and kitchen table where children eat.

76.     Defendant with a reckless indifference to the safety of others, marketed these dangerous MAGNETIC TRIVETS on informercials without any warnings, telling consumers: "I love these. These are silicone trivets, they're magnetic they just stick right to the bottom of your pan. You don't have to worry about holding things, placing things. Keeps your countertop protected."

77.     Defendant, with a reckless indifference to the safety of others, marketed the MAGNETIC TRIVETS to consumers without any warnings by stating: "And these are important. Please use them as they will protect your countertops."

78.     After failing to warn during infomercials, Defendant, with a reckless indifference to the safety of others, failed in multiple opportunities to provide any on product warnings, or on packaging warnings.

79.     The packaging for the MAGNETIC TRIVETS' cookware set failed to contain any warnings or use instructions regarding the dangers of the MAGNETIC TRIVETS.

80.     The Defendant, with a reckless indifference to the safety of others failed to provide any on product warnings or use instructions on the MAGNETIC TRIVETS.

81.     Defendant, with a reckless indifference to the safety of others, failed to provide any warnings about the magnets in the Use Instructions.

22

82.     Although the Defendant was notified on PLAINTIFF's injuries in or around late March or early April of 2018, as further evidence of its reckless indifference to the safety of others, Defendant continued to sell the MAGNETIC TRIVETS without providing any warnings, and without changing the design to remove the high-powered magnets or make them inaccessible.

83.     After being made aware of the defect and PLAINTIFF's injuries, Defendant, with a reckless indifference to the safety of others, violated section 15 of the Consumer Product Safety Act, 15 U.S.C. § 2064, by failing to immediately notify the CPSC of the Substantial Product Hazard contained in the MAGNETIC TRIVETS, and that the concealed high-powered magnets, without warnings, created an unreasonable risk of serious injury or death.

84.     Defendant, with a reckless indifference to the safety of others, failed to warn consumers of the defects in the MAGNETIC TRIVETS, and continued to manufacture, advertise, market, sell and/or distribute the MAGNETIC TRIVETS.

85.     Evidencing a continuous, conscious and intentional reckless indifference to the safety of other, it was not until nine (9) months after PLAINTIFF's devastating injuries, that Defendant, QVC, Inc., sent purchasers of the MAGNETIC TRIVETS what QVC, INC. titled an "IMPORTANT PRODUCT SAFTEY WARNING" stating: "The trivets contain small powerful magnets encased on the underside of the trivet (picture on reverse side). If swallowed, magnets can stick together across intestines causing serious infections and death. The trivets are not toys and should be kept out of reach of children. Please seek medical attention immediately if magnets are swallowed or inhaled."

86.     Defendant continued to evidence a reckless indifference to the safety of others by not recalling the MAGNETIC TRIVETS.

Case ID: 200201197

87.     Defendant continued to evidence a reckless indifference to the safety of others by never issuing a recall of the MAGNETIC TRIVETS. Instead, another entity, in conjunction with the CPSC finally recalled the MAGNETIC TRIVETS on July 31, 2019.

88.     The recall issued with the CPSC, identified the Substantial Product Hazard as: "Magnets can detach from the trivets, posing an ingestion hazard to children. When two or more magnets are swallowed, they can link together inside the intestines and clamp onto body tissues, causing intestinal obstruction, perforations, sepsis and death. Internal injury from magnets can pose serious lifelong health effects."

89.     The Recall Alert references PLAINTIFF's injuries by stating that there has been: "one report of magnets detaching from a trivet and being swallowed by a child. The child suffered intestinal injuries and blockage, requiring surgery."

90.     Defendant, QVC, Inc., has continued to evidence a reckless indifference to the safety of others by failing for over one (1) month to make any announcement on its website or shopping channels informing consumers of the MAGNETIC TRIVETS recall.

91.     As a direct and proximate result of the defective and dangerous MAGNETIC TRIVETS, Defendant's intentional concealment of such defects, their failure to warn consumers of such defects, their negligent misrepresentations, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiff and his family purchased and used the defective and dangerous MAGNETIC TRIVETS, which resulted in significant and painful bodily injuries to PLAINTIFF.

92.     As a direct result of Defendant QVC's defective MAGNETIC TRIVETS, as set forth herein, PLAINTIFF sustained severe and traumatic injuries, the full extent of which are not

Case ID: 200201197

yet known, and some or all of which may be permanent in nature, including, but not limited to, the following:

a.  Small bowel perforations;

b.  Multiple bowel obstructions;

c.  Necrosis;

d.  Repeated surgeries/procedures;

e.  Small bowel resections;

f.  Debridement;

g.  Pneumothorax;

h.  Permanent scarring;

i.  Sepsis;

j.  Cognitive and speech delays;

k.  As well as the signs, symptoms, and sequellae of all of the above;

l.  Other permanent and severe injuries as documented and described in the medical records;

m.  Past medical expenses;

n.  Future medical expenses, including, but not limited to, the expense of subsequent medical procedures and surgeries;

o.  Past and future pain and suffering;

p.  Past and future embarrassment, humiliation, and emotional distress;

q.  Past and future loss of life's pleasures;

r.  Future loss of earnings and earnings capacity;

s.  Past and future medical expenses; and,

Case ID: 200201197

t.      All recoverable damages under Pennsylvania law.

93.     As a result of Defendant QVC's defective and dangerous MANGETIC TRIVETS, PLAINTIFF suffered and continues to suffer permanent injuries, as set forth herein.

94.     PLAINTIFF's injuries and damages were caused by Defendant QVC's defective and dangerous MANGETIC TRIVETS and by its negligence and were not caused or contributed to by any negligence on the part of Plaintiff.

**WHEREFORE**, Emily Trias, as Parent and Natural Guardian of M.T., a minor, demands judgment against Defendant, QVC, Inc., for compensatory and punitive damages, along with interest, and costs of suit, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

<div align="center">

**COUNT I**
**STRICT LIABILITY**

**PLAINTIFF EMILY TRIAS, AS PARENT AND NATURAL GUARDIAN**
**OF M.T., A MINOR, V. QVC, INC.**

</div>

95.     PLAINTIFF incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

96.     At all times relevant hereto, Defendant QVC was engaged in the business of design, development, testing, promotion, manufacture, assembly, and/or sale of consumer and household products, including the subject MAGNETIC TRIVETS.

97.     At the time of their manufacture and sale and at the time of Plaintiff's injuries, the subject MAGNETIC TRIVETS were defective and unreasonably dangerous for use by intended and foreseeable consumers, including PLAINTIFF and his family.

98.     The subject MAGNETIC TRIVETS were in the same or substantially similar condition as when they left the possession of Defendant.

<div align="center">26</div>

99.     The subject MAGNETIC TRIVETS were expected to reach, and did reach, the consumer, including PLAINTIFF and his family, without substantial material change in the condition in which they were sold by Defendant.

100.    Neither PLAINTIFF nor his family materially altered the MAGNETIC TRIVETS.

101.    The subject MAGNETIC TRIVETS were defective at the time they were designed, manufactured, tested, marketed, assembled, and/or sold by Defendant in that they contained powerful, rare earth neodymium magnets.

102.    The subject MAGNETIC TRIVETS were defective at the time they were designed, manufactured, tested, marketed, assembled, and/or sold by Defendant in that the powerful, rare earth neodymium magnets were hidden.

103.    The subject MAGNETIC TRIVETS were defective at the time they were designed, manufactured, tested, marketed, assembled, and/or sold by Defendant in that the powerful, rare earth neodymium magnets could be easily accessed and removed by anyone, including young children.

104.    The subject MAGNETIC TRIVETS were defective at the time they were designed, manufactured, tested, marketed, assembled, and/or sold by Defendant in that they failed to restrict access to the powerful, rare earth neodymium magnets.

105.    The subject MAGNETIC TRIVETS were defective at the time they were designed, manufactured, tested, marketed, assembled, and/or sold by Defendant in that they failed to adequately protect and hold the powerful, rare earth neodymium magnets.

106.    At all material times hereto, Defendant intended its MAGNETIC TRIVETS to be used in the home and kitchen where children would be present and where they would eat.

27

107.    Multiple alternative designs to the MAGNETIC TRIVETS existed that would have restricted and prevented a child from accessing the high power, rare earth, neodymium magnets.

108.    Such alternative designs were feasible, available, and would have required no extra cost in manufacturing the MAGNETIC TRIVETS.

109.    Such alternative designs were necessary given the obvious dangers of ingestion of magnets by children.

110.    The subject MAGNETIC TRIVETS were defective at the time they were designed, manufactured, assembled, tested, marketed and/or sold by Defendant in that they contained no and/or inadequate warnings and/or instructions to alert the consumers, including PLAINTIFF, of the dangerous risks and propensity to cause injury due to their defective design, subjecting PLAINTIFF to risks that exceeded the benefits of the product and risks that exceeded the expectations of any consumer, including, but not limited to:

    a.    The MAGNETIC TRIVETS contained the powerful, rare earth neodymium magnets;

    b.    Powerful, rare earth neodymium magnets were hidden within the MAGNETIC TRIVETS;

    c.    The powerful, rare earth neodymium magnets within the MAGNETIC TRIVETS could detach, be easily accessed, or removed;

    d.    The powerful, rare earth neodymium magnets could easily be ingested;

    e.    The MAGNETIC TRIVETS and/or the powerful, rare earth neodymium magnets should be kept out of reach of children; and

    f.    The risks and dangers associated with ingestion of powerful, rare earth neodymium magnets.

111.    The subject MAGNETIC TRIVETS were defective at the time they were designed, manufactured, tested, marketed, assembled, and/or sold by Defendant in that it contained no and/or inadequate warnings and/or instructions regarding their storage and/or maintenance.

Case ID: 200201197

112.    At all material times hereto, the design defect of the MAGNETIC TRIVETS that Defendant designed, manufactured, tested, assembled, marketed, sold, and/or placed in the interstate stream of commerce in the United States by Defendant created a potentially catastrophic risk to consumers, like PLAINTIFF and his family, that far outweighed their utility and far outweighed the costs of designing, manufacturing, and producing an alternate design that was not defective.

113.    A reasonable person would conclude that the probability and seriousness of the harm outweighs the burden or cost of making the MAGNETIC TRIVETS safe.   Specifically including, but not limited to:

    a.    The MAGNETIC TRIVETS designed, manufactured, sold, and/or supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

    b.    The seriousness of the bodily injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use or reasonably foreseeable misuse;

    c.    Defendant failed to properly market, design, manufacture, distribute, supply, and/or sell the MAGNETIC TRIVETS, despite having extensive knowledge that the aforementioned injuries could and did occur;

    d.    Defendant failed to warn and place adequate warnings and instructions on the MAGNETIC TRIVETS;

    e.    Defendant failed to adequately test the MAGNETIC TRIVETS; and

    f.    Defendant failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that would have prevented the Plaintiff' injuries and damages.

114.    At all material times hereto, neither PLAINTIFF nor his family could not have discovered the design defects and risks as described herein, nor could he have been expected to

29

Case ID: 200201197

perceive the danger, and thus the unreasonably dangerous and defective condition of the MAGNETIC TRIVETS was unknown and unknowable to PLAINTIFF and his family.

115.    The defective design of the MAGNETIC TRIVETS and the failure of Defendant to warn consumers, as described above, was a factual cause of, increased the risk of harm to, and/or a substantial factor in causing the injuries and damages suffered by PLAINTIFF.

116.    By reason of its designing, manufacturing, testing, marketing, assembling, selling and distributing the MAGNETIC TRIVETS in a defective and unreasonably dangerous condition, Defendant is strictly liable to PLAINTIFF for his injuries and damages.

117.    The conduct of Defendant, as described above, was outrageous.  Defendant and risked the safety and well-being of the consumers and users of its MAGNETIC TRIVETS, including the PLAINTIFF, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public.  Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.

**WHEREFORE**, Emily Trias, as Parent and Natural Guardian of M.T., a minor, demands judgment against Defendant, QVC, Inc., for compensatory and punitive damages, along with interest, and costs of suit, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

<div align="center">

**COUNT II**
**<u>NEGLIGENCE</u>**

**PLAINTIFF EMILY TRIAS, AS PARENT AND NATURAL GUARDIAN OF M.T., A MINOR, V. QVC, INC.**

</div>

118.    **PLAINTIFF** incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

<div align="center">

30

</div>

119.    Defendant had a duty of reasonable care to design, manufacture, market, and/or sell non-defective MAGNETIC TRIVETS that are reasonably safe for their intended uses and reasonably foreseeable uses by consumers, such as PLAINTIFF and his family.

120.    Defendant failed to exercise ordinary care in the manufacture, testing, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and/or marketing of its MAGNETIC TRIVETS in that Defendant knew or should have known that said MAGENTIC TRIVETS created a high risk of unreasonable harm to the PLAINTIFF, his family, and consumers alike.

121.    Defendant knew or should have known that the high-powered magnets from the MAGNETIC TRIVETS could become detached, easily accessed, or removed, and that it was reasonably foreseeable that PLAINTIFF and consumers and children like him could ingest these dangerous magnets in a household and/or kitchen setting.

122.    Defendant, individually and by and through its actual, authorized, and/or apparent agents, servants, and/or employees, was negligent in the design, manufacture, testing, advertising, warning, marketing and/or sale of the subject MAGENTIC TRIVETS.

123.    The negligence of Defendant includes, but is not limited to, one or more of the following negligent and reckless acts or omissions:

      a.      Failing to use reasonable and proper care in designing, developing, manufacturing, and distributing the MAGNETIC TRIVETS to avoid the aforementioned risks of serious bodily injury to individuals, such as MINOR PLAINTIFF;

      b.      Designing and manufacturing the MAGNETIC TRIVETS such that they contained powerful, rare earth magnets;

      c.      Designing and manufacturing the MAGNETIC TRIVETS such that they contained powerful, rare earth magnets hidden within them;

31

Case ID: 200201197

d.      Failing to use reasonable and proper care in designing and manufacturing
        of the MAGNETIC TRIVETS such that access to the powerful, rare earth
        magnets contained within them was restricted;

e.      Failing to use reasonable and proper care in designing and manufacturing
        of the MAGNETIC TRIVETS such that users and consumers could not
        easily access the powerful, rare earth magnets contained within them;

f.      Failing to use reasonable and proper care in designing and manufacturing
        of the MAGNETIC TRIVETS such that the powerful, rare earth magnets
        contained within them were adequately protected and held;

g.      Failing to use reasonable and proper care in designing and manufacturing
        the MAGNETIC TRIVETS in a way such that the powerful, rare earth
        magnets could be detached, accessed, or removed;

h.      Failure to use reasonable and proper care in designing and manufacturing
        the MAGNETIC TRIVETS such that it would prevent customers and users
        from gaining access to the powerful, rare earth magnets contained within
        them;

i.      Failing to use adequate testing and to make necessary design modifications
        to the MAGNETIC TRIVETS so as to ensure the powerful, rare earth
        magnets contained within them were adequately protected;

j.      Failing to use adequate testing and to make necessary design modifications
        to the MAGNETIC TRIVETS so as to ensure the powerful, rare earth
        magnets contained within them could not be detached, accessed, or
        removed;

k.      Using powerful, rare earth magnets in the MAGNETIC TRIVETS,
        concealing them, and then allowing them to become detached;

l.      Failing to warn and/or adequately warn that contained and hidden within
        the MAGNETIC TRIVETS were powerful, rare earth magnets;

m.      Failing to warn and/or adequately warn that the powerful, rare earth
        magnets could become detached, accessed, or removed from the
        MAGNETIC TRIVETS;

n.      Failing to warn and/or instruct regarding the storage, use, and/or
        maintenance of the MAGNETIC TRIVETS;

o.      Failing to warn and/or adequately warn about the dangers of the magnets
        contained and hidden within the MAGNETIC TRIVETS;

32

Case ID: 200201197

p.  Failing to use adequate testing and to make necessary design modifications so as to ensure the powerful, rare earth magnets were not detachable, accessible, nor could be removed;

q.  Failing to adequately provide post-sale warnings related to the dangers and risks associated with the MAGNETIC TRIVETS, including, but not limited to, that the MAGNETIC TRIVETS contained the powerful, rare earth magnets;

r.  Failing to adequately provide post-sale warnings on safe use, storage, and maintenance of the MAGNETIC TRIVETS.

s.  Manufacturing the MAGNETIC TRIVETS such that the powerful, rare earth magnets contained within them could be accessed and removed;

t.  Failing to have adequate policies and/or procedures to ensure that the MAGNETIC TRIVETS were designed in a manner so consumers would not be subjected to the unreasonably risk of the powerful, rare earth magnets being accessed, removed, or ingested;

u.  Placing a defective and unsafe product into the stream of commerce;

v.  Aggressively over-promoting and marketing the MAGNETIC TRIVETS through television, social media, and other advertising outlets; and

w.  Failing to recall the defective MAGNETIC TRIVETS.

124.  Despite the fact that Defendant knew or should have known that consumers were able to access, remove, and ingest the extremely dangerous magnets, Defendant continued to market the defective MAGNETRIC TRIVETS to the general public, and failed and refused to recall them after being notified of PLAINTIFF's injuries.

125.  Furthermore, Defendant failed to conduct a timely recall of the MAGNETIC TRIVETS when they knew or should have known of their dangerous propensities and defects, despite ample notice of such defects.

126.  In designing, manufacturing, and/or selling the MAGNETIC TRIVETS, Defendant undertook a duty of care to PLAINTIFF.

33

Case ID: 200201197

127.   Defendant breached the duty of care owed to PLAINTIFF.

128.   Defendant's negligence was a factual cause of, increased the risk of harm to, and/or a substantial factor in causing the injuries and damages suffered by PLAINTIFF.

129.   The conduct of Defendant, as described above, was outrageous. Defendant risked the safety and well-being of the consumers and users of its MAGENTIC TRIVETS, including the PLAINTIFF, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.

**WHEREFORE**, Emily Trias, as Parent and Natural Guardian of M.T., a minor, demands judgment against Defendant, QVC, Inc., for compensatory and punitives damages, along with interest, and costs of suit, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

<div align="center">

**COUNT III**
**FRAUDULENT CONCEALMENT**

**PLAINTIFF EMILY TRIAS, AS PARENT AND NATURAL GUARDIAN**
**OF M.T., A MINOR, V. QVC, INC.**

</div>

130.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

131.   At the time in which the MAGENTIC TRIVETS were purchased, up through and during the period in which it was used, Defendant fraudulently concealed and suppressed material information regarding the safety and efficacy of their MAGNETIC TRIVETS, including information regarding the risk that the high-powered magnets could become detached and that it was reasonably foreseeable that PLAINTIFF and consumers and children like him could ingest these dangerous magnets in a kitchen setting.

<div align="center">34</div>

132.     Based on information and belief, the fraudulent misrepresentation described herein was intentional to maintain and support the sales volume of their MAGNETIC TRIVETS.

133.     At the time Defendant concealed the fact that their MAGNETIC TRIVETS were not safe for use by consumers, Defendant was under a duty to communicate this information to the PLAINTIFF , his family, and the general public in such a manner that they could appreciate the risks and defects associated with the subject MAGNETIC TRIVETS at issue.

134.     PLAINTIFF and his family relied upon the outrageous untruths by Defendant regarding the safety of the MAGENTIC TRIVETS.

135.     Defendant did not provide PLAINTIFF or his family with the information necessary for them to make an adequate, informed decision whether to use the MAGNETIC TRIVETS or keep them in the family's home and kitchen.

136.     Defendant improperly over-marketed and advertised their MAGNETIC TRIVETS as "these are important. Please use them as they will protect your countertops."

137.     Said advertisements and promotions contained material and intentionally concealed material as to the safety and efficacy of their MAGNETIC TRIVETS, which Defendant knew to be false with respect to representations, and important concealed dangers with respect to the concealed dangers, for the purpose of fraudulently inducing consumers, such as the PLAINTIFF and his family, to use the MAGNETIC TRIVETS and keep them in the family's home and their kitchen where their children eat.

138.     PLAINTIFF and his family relied on these material misrepresentations and the lack of reported dangers from the concealment when deciding to use the MAGNETIC TRIVETS and keep them in the family's home and their kitchen where their children eat.

Case ID: 200201197

139.   Had PLAINTIFF and his family been aware of the hazards associated with the MAGNETIC TRIVETS from Defendant, they would not have used the MAGNETIC TRIVETS or kept them in the kitchen where children eat.

140.   Upon information and belief, Defendant actively and fraudulently concealed information in exclusive possession of Defendant regarding the risk hazards associated with the risk that the high-powered magnets could become detached, and that it was reasonably foreseeable that PLAINTIFF and consumers and children like him could ingest these dangerous magnets in a kitchen setting, with the purpose of preventing consumers, such as the PLAINTIFF in this case, from discovering these hazards.

141.   Defendant's malicious and intentional concealment of this material information from PLAINTIFF and his family by Defendant was a factual cause of, increased the risk of harm to, and/or a substantial factor in causing the injuries and damages suffered by PLAINTIFF.

The conduct of Defendant, as described above, was outrageous. Defendant risked the safety and well-being of the consumers and users of its MAGNETIC TRIVETS, including the PLAINTIFF, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.

36

Case ID: 200201197

**WHEREFORE**, Emily Trias, as Parent and Natural Guardian of M.T., a minor, demands judgment against Defendant, QVC, Inc., for compensatory and punitive damages, along with interest, and cost of suit, in an amount in excess of Fifty Thousand Dollars ($50,000.00) and prevailing arbitration limits, exclusive of prejudgment interest, post-judgment interest and costs.

**KLINE & SPECTER, P.C.**

Date: 2/11/2020_                    By: _____

THOMAS R. KLINE, ESQUIRE
PATRICK FITZGERALD, ESQUIRE
I.D. NOs. 28895/320051
1525 Locust Street
Nineteenth Floor
Philadelphia, PA 19102
(215) 772-1000

**PANISH SHEA & BOYLE LLP**
BRIAN PANISH, ESQ. (to be admitted *pro hac vice*)
ADAM SHEA, ESQ. (to be admitted *pro hac vice*)
11111 Santa Monica Blvd, Suite 700
Los Angeles, CA 90025
(310) 477-1700

**SHOOP,   A   PROFESSIONAL   LAW
CORPORATION**
DAVID R. SHOOP, ESQ. (to be admitted *pro hac vice*)
THOMAS S. ALCH, ESQ. (to be admitted *pro hac vice*)
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90212
(310) 620-9533
*Attorneys for Plaintiff*

Case ID: 200201197

## VERIFICATION

I, Emily Trias, hereby verify that the information and descriptions set forth in the Civil Action Complaint are based upon first-hand information that I have provided to counsel in good faith and upon information obtained by our counsel in the course of counsel's investigating this action.  The language of the Civil Action Complaint and the legal theories stated in this Civil Action Complaint are those of counsel, and not my own.  I have relied in good faith upon my counsel in signing this verification.  All statements in the Civil Action Complaint are founded upon reasonable belief.  I believe, and therefore verify that, to my knowledge, the statements contained in the Civil Action Complaint are true and correct.  This verification is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

EMILY TRIAS

Date: 1|31|20