IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | CIVIL ACTION |
| **EMILY TRIAS** | : | |
| *AS PARENT AND NATURAL* | : | |
| *GUARDIAN OF M.T., A MINOR*, | : | |
| Plaintiff, | : | |
| v. | : | NO. 20-813 |
| | : | |
| **QVC, INC.** | : | |
| *Defendant.* | : | |

# MEMORANDUM

Plaintiff filed this products-liability action against Defendant QVC in the Court of Common Pleas of Philadelphia County. ECF No. 1. Defendant QVC is headquartered in this District; QVC removed this matter prior to service of the Complaint on Defendant, and therefore this Court found that removal was proper. ECF No. 33. Defendant QVC now moves the Court to transfer this case to the District of South Dakota pursuant to 28 U.S.C. § 1404. ECF No. 35.

The Complaint alleges that minor Plaintiff suffered serious injuries after swallowing magnets that were contained in a product ("Subject Product") sold by QVC. ECF No. 1-1. Plaintiff maintains causes of actions against Defendant QVC for strict liability, negligence, and fraudulent concealment. *Id*. Defendant filed this motion to transfer venue pursuant to 28 U.S.C. § 1404, contending that this matter would be more properly litigated in the District of South Dakota because the

Subject Product was manufactured outside of the United States, purchased by a South Dakota resident as a gift for another South Dakota resident, and allegedly caused injury to a child in South Dakota, involving hospitalization and medical care in South Dakota.  ECF No. 35.  Plaintiff counters that QVC has not met its burden to show that this matter should be transferred to the District of South Dakota because QVC made decisions regarding the sale and distribution of the Subject Product at its headquarters in this District, and there are third party witnesses in this District whose appearance could not be compelled in the District of South Dakota.  ECF No. 37.

Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C.A. § 1404. "The burden of establishing the need for transfer still rests with the movant, . . . [a]nd, 'in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed.'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal citations omitted); *see also Shutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) ("The decision to grant a motion for transfer of venue lies within the broad discretion of the district court, but is not to be liberally granted.").

In determining whether to transfer venue pursuant to §1404, courts are required to "consider all relevant factors to determine whether on balance the

litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum," including both private and public interest factors. *Id*.

Private interest factors the court must consider include: "(1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records." *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 196–97 (E.D. Pa. 2008) (citing *Jumara*, 55 F.3d at 879).

Public interest factors the court must consider include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id*. (citing *Jumara*, 55 F.3d at 879).

## I. Private Interest Factors

The Court balances the following private interest factors in considering whether to grant Defendant's Motion to Transfer Venue.

### 1. Plaintiff's Forum Preference as Manifested in the Original Choice

"[P]laintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" *Shutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Ungrund v. Cunningham Brothers, Inc.*, 300 F.Supp. 270, 272 (S.D. Ill. 1969)). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* (internal citations omitted). While Plaintiff's choice of forum is typically entitled to substantial weight, "[w]hen a plaintiff files suit outside of the plaintiff's home forum, the choice will receive less deference." *McCraw v. GlaxoSmithKline*, No. CIV.A. 12-2119, 2014 WL 211343, at *4 (E.D. Pa. Jan. 17, 2014). Although Plaintiff filed suit outside of her home forum of South Dakota, this factor still weighs against transfer.

### 2. Defendant's Preference

"The second *Jumara* factor—the defendant's preference—in reality does little more than frame the issue, because there would be no motion to transfer unless the defendant prefers a different forum." *Edwards v. Equifax Info. Servs.,*

LLC, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018). "The essential question is whether a combination of other factors are sufficient to overcome the presumption that the plaintiff's preference governs." *Id*. "The burden of establishing the need for transfer still rests with the movant." *Jumara*, 55 F.3d at 879. Here, Defendant seeks to transfer this matter out of its home forum to Plaintiff's home forum. Therefore, this factor is neutral.

    3. <u>Whether the Claim Arose Elsewhere</u>

Defendant contends, "Plaintiff's claim arose in South Dakota" because "[t]hat is where the Subject Product was allegedly purchased, distributed, and used, where it allegedly caused injury, and, presumably, where the Minor Plaintiff received treatment and underwent surgeries." ECF No. 35 at 3. Plaintiff, on the other hand, contends that because QVC's headquarters are located in this district, a "number of the operative facts pertaining to this case occurred in the Eastern District of Pennsylvania," as these headquarters are the "'nerve center' from which QVC sourced, tested, advertised, marketed, sold and shipped the" product at issue, "as well as issued its" safety warnings. ECF No. 37 at 7.

While some courts have found that the "'operative facts' of a products liability action are deemed to occur where the allegedly defective product was used and injury occurred," in those matters, the physical location of the accident was significant to plaintiffs' claims. *Coppola*, 250 F.R.D. at 196–97 (products liability

matter where a leased defective propane cylinder exploded, causing injuries). Thus, when the "location of the action is likely to be a particular focus" of the action, courts have found that this factor weighs against transfer. *Blankenship v. Graco Children's Prod.*, Inc., 2011 WL 4712419, at *3 (E.D. Pa. Oct. 6, 2011).

However, "in many products liability cases . . . the location of the accident will be relatively unimportant for venue purposes." *Lempke v. Gen. Elec., Co.*, 2011 WL 3739499, at *4–5 (E.D. Pa. Aug. 25, 2011) (citing *Brown v. Kia Motors Corp.,* 2007 WL 539652, at *3 (W.D.Pa. 2007) ("[T]his is a product liability action. Consequently, this claim does not have a single 'situs.'"); *Duvall v. Avco Corp.,* 2006 WL 723484, at *2 (M.D.Pa. 2006) ( "[T]he claims asserted against the Defendants are of a product liability nature, therefore the physical location of the accident carries less weight than the Defendants assert.")).

Here, the operative facts are both that minor Plaintiff allegedly swallowed magnets which were allegedly contained in the Subject Product, resulting in hospitalization and medical care, in the District of South Dakota and also that QVC made the decision to sell and promote the Subject Product at its headquarters in the Eastern District of Pennsylvania. Neither party has shown that there would be significant physical evidence from the site of the alleged accident, and therefore

the physical location of the accident carries less weight than Defendants contend. Accordingly, this factor is neutral.

    4.    <u>Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition</u>

As Defendant's headquarters are located in this District, Plaintiff resides in the District of South Dakota, and each wants to litigate in the other's home forum, this factor is neutral.

    5.  <u>Convenience of The Witnesses</u>

This private interest factor considers the location of witnesses but "only to the extent that witnesses may actually be unavailable for trial." *Jumara*, 55 F.3d at 879. Furthermore, "[t]he convenience of party witnesses or witnesses employed by a party is given minimal weight in this analysis because parties are obligated to produce the attendance of themselves and their employees." *Snyder v. Bertucci's Rest. Corp.*, 2012 WL 6601384, at *3 (E.D.Pa. Dec.18, 2012). "The party seeking transfer must only provide enough information about proposed witnesses and their expected testimony 'to enable the District Court to balance the parties' interests.'" *Kiker v. SmithKline Beecham Corp.*, 2014 WL 4948624, at *7 (E.D. Pa. Oct. 1, 2014) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)). "Extensive detail is not necessary." *Id*.

Plaintiff contends that minor Plaintiff's treating surgeon, Dr. Sarah A. Jones Sapienza, currently resides and works in the Eastern District of Pennsylvania, and therefore the Court can compel her live testimony in this District but would not be able to do so in the District of South Dakota. ECF No. 37 at 8. Plaintiff contends that Dr. Sapienza "will provide critical testimony and records regarding [minor] Plaintiff's surgical procedures, nature and extent of injuries and prognosis," and therefore the "importance of this material, third party witness cannot be overstated." *Id*. Therefore, Plaintiff contends, if the Court grants Defendant's Motion to Transfer Venue to South Dakota, the Court will not be able to compel Plaintiff's treating surgeon's live testimony at trial. *Id*.

Plaintiff further contends that there are three material fact witnesses, not employed by QVC, who "wrote the script and made the representations about the" Subject Product, who all reside within this Court's District and therefore could not be compelled to testify in South Dakota. ECF No. 37 at 3, 9.

Defendant counters that Plaintiff overstates the importance of this treating surgeon, because Plaintiff has not seen this treating surgeon in two years. ECF No. 38 at 1-2. Defendant further identifies fifteen other physicians, all located in South Dakota, who provided care to Plaintiff. ECF No. 38 at 2. Defendant contends that these fifteen physicians would all have potentially relevant information and could not be compelled to testify in the Eastern District of Pennsylvania. *Id*. Defendant

notes that there are also an "untold number of additional witnesses who have yet to be identified at this early stage of the proceedings but whom Plaintiff gives no reason to believe will be located anywhere except South Dakota." *Id*. at 3.

First, Defendant's mention of the "untold number of additional witnesses" who may be located in South Dakota does not provide "enough information about [these] proposed witnesses and their expected testimony" for the Court to consider them in balancing the parties' interests. *Kiker*, 2014 WL 4948624, at *7.

Furthermore, both parties have identified "key" witnesses who reside in one of the districts and who could not be compelled to testify in the other district. Plaintiff has identified Dr. Sapienza as Plaintiff's treating surgeon, who works and resides in this District, and who Plaintiff contends will provide "critical testimony and records regarding Plaintiff's surgical procedures, nature and extent of injuries and prognosis." ECF No. 37 at 8.  Plaintiff further identifies three individuals Plaintiff contends are responsible for the sales script and sales representations for the Subject Product, who reside in the Eastern District of Pennsylvania but do not work for QVC.  *Id*. at 3, 9. On the other hand, Defendant identifies additional doctors in South Dakota who treated Plaintiff following the incident, who could not be compelled to testify at a trial in the Eastern District of Pennsylvania. ECF No. 38 at 1-2.

The Court balances that both parties have identified "enough information about proposed [nonparty] witnesses and their expected testimony" to show that trial either in this District or in the District of South Dakota would pose problems for certain witnesses. *Kiker*, 2014 WL 4948624, at *7. Therefore, this factor is ultimately neutral.

### 6. Location of Books and Records

As "[t]echnical advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis," and as much of the discovery in this case will involve electronic discovery that is available in both forums, the Court determines that this factor is neutral. *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003)); *see also Jumara*, 55 F.3d at 879 ("limit[ing] this factor] to the extent that the files could not be produced in the alternative forum").

## II. Public Interest Factors

The Court balances the following public interest factors in considering whether to grant Defendant's Motion to Transfer Venue.

### 1. Enforceability of the Judgment;

Both parties agree this factor is neutral. ECF No. 35 at 10; ECF No. 37 at 11.

2. <u>Practical Considerations That Could Make the Trial Easy, Expeditious, Or Inexpensive</u>

Defendant contends that, as the parties have not yet conducted discovery, it does not know yet what type of evidence it will need, but if there are any responsible third parties, they will be located in South Dakota. ECF No. 35 at 10-11. Defendant further states that in order to implead those that could potentially be at fault, it might need to initiate a second action "presumably in South Dakota," and therefore this factor weighs in favor of transfer. ECF No. 35 at 9.

However, contending that a third party may potentially be implicated and that the potentially implicated third party might reside in South Dakota is not sufficient to show that transferring this case to South Dakota would make the trial easy, expeditious, or inexpensive. *See Kiker*, 2014 WL 4948624, at *7. As previously discussed, both parties indicated that "key" witnesses are located both in South Dakota *and* in Pennsylvania. Defendant's additional contention that it *may* need to commence an impleader action in South Dakota is not sufficient to balance the factors in favor of transfer. Therefore, this factor is neutral.

3. <u>Relative Administrative Difficulty in The Two Fora Resulting from Court Congestion</u>

Both parties agree this factor is neutral. ECF No. 35 at 12; ECF No. 37 at 12.

4. <u>Local Interest in Deciding Controversies at Home</u>

"Typically, when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest." *Coppola*, 250 F.R.D. at 201. Defendant contends that this factor weighs in favor of transfer because "the events of this case occurred in the District of South Dakota," and therefore "the local citizens of South Dakota in deciding the outcome outweigh the interests of their Pennsylvania counterparts." ECF No. 35 at 12. Plaintiff responds that Pennsylvania not only has "an interest in protecting its own residents from dangerous products sold by companies within the state, Pennsylvania also has a compelling and equal interest in regulating corporations and distributors within the Commonwealth and preventing them from harming minor children in other localities with their products." ECF No. 37 at 13. As discussed previously, the events of this case took place both in South Dakota, where the alleged incident and medical treatment occurred, and in Pennsylvania, where QVC determined to sell the Subject Product. Therefore, this factor is neutral.

5. <u>Public Policies of The Fora</u>

Defendant contends that "[b]ecause both states have justified public policies underlying their product liability laws, this factor is neutral." ECF No. 35 at 14. Plaintiff contends that "QVC seeks to avail itself of the 'innocent seller statute' [in

South Dakota] to avoid potential liability," but as Pennsylvania has a "public interest in protecting consumers and compensating injured parties as a result of defective products . . . the public policies of the forum clearly weigh in favor of Pennsylvania. . . ." ECF No. 37 at 14.[1]

Even if this Court transferred the matter to the District of South Dakota pursuant to § 1404, the South Dakota court would "apply the law that would have been applied had the case not been transferred." *Kiker*, 2014 WL 4948624, at *10 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639). Thus, a Pennsylvania choice of law analysis will determine which state laws will apply to the substantive issues in this case, regardless of whether or not this matter is transferred. *Id*. Therefore, this factor remains neutral, as QVC's position regarding the applicability of the Innocent Seller Statute will be determined under a Pennsylvania Choice of Law analysis in either forum.

> 6. Familiarity of The Trial Judge with The Applicable State Law in Diversity Cases.

As Pennsylvania choice of law rules apply whether this matter is transferred or not, the fact that a South Dakota court would need to apply Pennsylvania choice of law rules "reduces whatever weight" this Court "might have given to the public-interest factor that looks to the familiarity of the transferee court with the

---

[1] South Dakota's innocent seller statute states, "[n]o cause of action based on the doctrine of strict liability in tort may be asserted or maintained against any distributor, wholesaler, dealer, or retail seller." S.D. Law 20-9-9.

applicable law." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 67 (2013). "[I]n any event, federal judges routinely apply the law of a State other than the State in which they sit." *Id*. Therefore, as this Court is capable of applying either Pennsylvania or South Dakota law, whether South Dakota or Pennsylvania law ultimately applies is irrelevant to the Court's balancing analysis. Therefore, this factor is neutral.

Ultimately, the events in this case took place in both South Dakota, where the alleged incident and medical care occurred, and in Pennsylvania, where Defendant QVC made decisions regarding the sale of the Subject Product. Unlike some products liability cases, the physical location of the alleged accident in this case is not significant to Plaintiff's claims of strict liability, negligence, and fraudulent concealment. Furthermore, both parties have identified "key" third party witnesses, some who could not compelled to testify at trial in this District and others who could not be compelled to testify in the District of South Dakota. Additionally, both states have a local interest in deciding product liability cases at home. Therefore, after balancing all private and public *Jumara* factors, the Court finds that Defendant has not overcome its burden to show that, "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer" to the District of South Dakota. *Jumara*, 55 F.3d at 879.

The Court therefore denies Defendant's Motion to Transfer Venue (ECF No. 35) pursuant to § 1404. An appropriate order will follow.

**BY THE COURT:**

**DATED:   May 28, 2020**

**/s/ Chad F. Kenney**
**CHAD F. KENNEY, JUDGE**