IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMILY TRIAS, AS PARENT AND NATURAL GUARDIAN OF M.T., a minor, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 2:20-cv-813-CFK ) ) |
| QVC, INC., | ) ) |
| Defendant. | ) |

# **ORDER**

The Court—having carefully considered the Parties' Motions to Establish Choice of Law and related briefing, and any additional materials or argument presented by the parties—FINDS that South Dakota has the most significant relationship to this litigation.

IT IS THEREFORE ORDERED that the substantive law of South Dakota law will apply to Plaintiff's claims and QVC's defenses thereto.

SIGNED this ____ day of _____, 2020.

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMILY TRIAS, AS PARENT AND NATURAL GUARDIAN OF M.T., a minor,<br><br>　　　　Plaintiff,<br><br>v.<br><br>QVC, INC.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 2:20-cv-813-CFK<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S MOTION TO ESTABLISH CHOICE OF LAW

In accordance with the Scheduling Order entered on June 16, 2020, Dkt. 44, Defendant QVC, Inc., by and through its attorneys, Clem C. Trischler and Jason M. Reefer of Pietragallo Gordon Alfano Bosick & Raspanti, moves this Court to apply the substantive law of Plaintiff's home state of South Dakota to the claims and defenses at issue in this product-liability action. This motion is supported by the accompanying memorandum of law, which is incorporated by reference.

Dated: August14, 2020　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　PIETRAGALLO GORDON ALFANO BOSICK
　　　　　　　　　　　　　　　　& RASPANTI, LLP

　　　　　　　　　　　　　　　　By: *s/ Clem C. Trischler*
　　　　　　　　　　　　　　　　Clem C. Trischler (*pro hac vice*)
　　　　　　　　　　　　　　　　Jason M. Reefer
　　　　　　　　　　　　　　　　One Oxford Centre, 38th Floor
　　　　　　　　　　　　　　　　Pittsburgh, PA 15219
　　　　　　　　　　　　　　　　412-263-1816 Telephone

412-263-4246 Facsimile
cct@pietragallo.com
jmr@pietragallo.com

*Counsel for QVC, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMILY TRIAS, AS PARENT AND NATURAL GUARDIAN OF M.T., a minor,<br><br>    Plaintiff,<br><br>v.<br><br>QVC, INC.,<br><br>    Defendant. | Civil Action No. 2:20-cv-813-CFK |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ESTABLISH CHOICE OF LAW

As forecast in the Joint Rule 26(f) Planning Report of the Parties, Dkt. 39, there is a disagreement over which state's substantive law should apply to this case—Pennsylvania or South Dakota. Thereafter, the Court issued a Scheduling Order, Dkt. 44, directing the parties to brief the choice-of-law issue. This is a product-liability action. The product at issue was manufactured overseas, purchased by and distributed to a South Dakota resident and then gifted to another South Dakota resident, used in South Dakota by South Dakota residents, alleged to have caused injuries in South Dakota to a South Dakota resident, resulting in the administration of medical care in South Dakota. Defendant QVC, Inc. ("QVC"), by and through its attorneys, Clem C. Trischler and Jason M. Reefer of Pietragallo Gordon Alfano Bosick & Raspanti, LLP, submits this memorandum of law in

1

support of its motion to apply the substantive law of South Dakota to the claims and defenses at issue in this case.

## I.  INTRODUCTION

A conflict of laws exists with regard to South Dakota's and Pennsylvania's liability schemes for product-liability claims. As this Court sits in diversity, it must apply Pennsylvania's choice-of-law rules, which call for the application of the substantive law of the state with the greatest relationship to the litigation. This case involves a trivet manufactured overseas by a third party, sold in South Dakota to a South Dakota resident, shipped to South Dakota, and then gifted to another South Dakota resident, which allegedly caused injury to a child in South Dakota necessitating hospitalization and medical care in South Dakota. Pennsylvania's only relationship with the suit is that QVC, the alleged retailer of the cookware set, is headquartered in Chester County. Because South Dakota has the most significant contacts and relationship with this litigation, South Dakota law—including its innocent-seller statute—should be applied to the parties' claims and defenses.

## II.  FACTUAL BACKGROUND

Emily Trias ("Plaintiff"), as parent and natural guardian of M.T., a minor ("Minor Plaintiff"), initiated this lawsuit in February of 2020, alleging that Minor Plaintiff ingested neodymium magnets that were contained within and made part of a trivet that was allegedly sold as part of a Copper Chef 10-Piece Cerami-Tech Non-

Stick Cookware Set (the "Subject Product"). The Subject Product was purchased by non-party Marylou Zimmer, a South Dakota resident, and gifted to Plaintiff, also a South Dakota resident. (*Id.* ¶¶ 11, 28–30; Dkt. 35-1, Purchase Order.) It is alleged that Minor Plaintiff dislodged the magnets from the trivet and ingested them while in Plaintiff's care in South Dakota. As a result, Minor Plaintiff is alleged to have sustained permanent injuries in South Dakota—including, but not limited to, small bowel perforations, multiple bowel obstructions, necrosis, and other injuries requiring multiple hospitalizations and surgeries, all of which were performed in South Dakota. (Dkt. 1-1, Compl. ¶¶ 37, 92; Dkt. 38-1, Decl. ¶ 3.) QVC, the alleged retailer, played no role in the design or manufacture of the trivet, nor did it craft the instructions and warnings provided with the product. (Dkt. 4, Answer ¶¶ 10, 13; Dkt. 39, Joint Rep. 1.) QVC was merely one link in the chain of distribution from an overseas, third-party manufacturer to a third-party distributor to QVC to third-party purchaser to Plaintiff. (*See id.*)

### III.   STANDARD

A federal court sitting in diversity must apply the choice of law rules of the forum state. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). Pennsylvania's choice of law approach adopts a flexible, three-part test which requires an analysis of the policies and interests underlying the issue before the court.

> First, the court must determine whether a real conflict exists, that is, whether these states would actually treat the relevant issues any differently. If there is no substantive difference between the laws of the competing states, no real conflict exists and forum law applies. Where a real conflict exists, the court moves to the second step and examines the governmental policies underlying each law in order to classify the conflict as true, false or an unprovided for situation. A false conflict occurs where only one state's interests would be impaired, and the law of the interested state applies. Where, on the other hand, each jurisdiction has a governmental policy or interest that would be impaired by the application of the other state's law, a true conflict exists. Where there is a true conflict, the court turns to the third step to determine which state has the greater interest in the application of its law. This determination demands that a court weigh the contacts each jurisdiction has with the dispute on a qualitative scale according to the extent they implicate the policies and interests underlying the particular dispute before the court.

*Kallman v. Aronchick*, 981 F. Supp. 2d 372, 378 (E.D. Pa. 2013) (internal citations and quotations omitted).

## IV.   ARGUMENT

### A.   South Dakota and Pennsylvania Law Present an Actual and True Conflict in Law for Seller Liability.

The first step in the choice-of-law analysis is determining whether there is an actual conflict between the potentially applicable laws. *Hammersmith*, 480 F.3d at 230; *Air Prod. & Chem., Inc., v. Eaton Metal Prod. Co.*, 272 F. Supp. 2d 482, 490 n. 9 (E.D. Pa. 2003). In this case, there is.

Section 20-9-9 of the South Dakota Codified Laws states that:

> [n]o cause of action based on the doctrine of strict liability in tort may be asserted or maintained against any distributor, wholesaler,

4

> dealer, or retail seller of a product which is alleged to contain or possess a latent defective condition unreasonably dangerous to the buyer, user, or consumer unless said distributor, wholesaler, dealer, or retail seller is also the manufacturer or assembler of said product or the maker of a component part of the final product, or unless said dealer, wholesaler, or retail seller knew, or, in the exercise of ordinary care, should have known, of the defective condition of the final product. Nothing in this section shall be construed to limit any other cause of action from being brought against any seller of a product.

SDCL § 20–9–9. Under South Dakota law, therefore, retailers like QVC are not subjected to strict liability; proof of negligence is required. Pennsylvania, on the other hand, applies strict liability to any entity in the chain of distribution. *See Burch v. Sears, Roebuck & Co.*, 467 A.2d 615, 623 n.4 (Pa. Super. 1983).

"When dealing with liability based on negligence, strict liability, products liability or the like, differing rules as to liability or damages generally represent genuine conflicts since the laws covering these issues take into account both the needs of the injured plaintiffs and the economic viability of the defendants." *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 614 (E.D. Pa. 2008). A real conflict exists between the laws of South Dakota and Pennsylvania.

The next step in Pennsylvania's choice-of-law analysis is to examine the governmental policies underlying each law, and classify the conflict as "true," "false," or "unprovided-for". *Hammersmith*, 480 F.3d at 230. Both South Dakota and Pennsylvania have crafted product-liability schemes to compensate residents

injured by defective products and to regulate the conduct of manufacturers and distributors within the state. *See Peterson v. Safway Steel Scaffolds Co.,* 400 N.W.2d 909, 915 (S.D. 1987); *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 201 (E.D. Pa. 2008). Thus, each state has an interest in the application of its particular laws and a true conflict exists. *See Torres v. Lucca's Bakery*, 487 F. Supp. 2d 507, 513 (D.N.J. 2007) (where two states both generally seek to compensate injured plaintiffs, a true conflict exists).

### B. South Dakota Law Has the Greater Interest in the Application of its Law

When a true conflict exists, a court must then determine which state has the greater interest in the application of its law. *Hammersmith*, 480 F.3d at 231. In making this determination, the Court must look to an array of factors such as: (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (iv) the place where the relationship, if any, between the parties is centered. *Knipe*, 583 F. Supp. at 614 (internal citations omitted). A court must weigh the contacts each jurisdiction has with the dispute on a qualitative rather than a quantitative scale, analyzing the extent they implicate the policies and interests underlying the particular dispute before the court. *Id.* This analysis looks to "the extent to which one state rather than another has demonstrated, by reason of its

policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law." *Troxel v. A.I. duPont Institute*, 636 A.2d 1179, 1181 (Pa. Super. 1994) (internal citations omitted).

The location where a product-liability plaintiff was injured is afforded substantial weight in the choice-of-law analysis unless the place of the accident is considered "fortuitous," such as with a plane crash. *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 401 (3d Cir. 1987) ("Cases applying the *Griffith/Cipolla* test make clear that where the place where the injury occurred was not fortuitous, as for example, in an airplane crash, the place of injury assumes much greater importance, and in some instances may be determinative." [internal citations and quotations omitted]). In fact, in cases where the location of the accident and plaintiff's domicile are one in the same, courts have almost universally held that the law of plaintiff's home state will apply to the underlying claims. On the other hand, this Court has expressly downplayed the significance of defendant's principal place of business.

In *Knipe*, for example, this Court compared the contacts of New Jersey—the state where the product (Paxil, a prescription drug) was purchased, used, and caused injury—with those of Pennsylvania—where the defendant was headquartered—and found that the plaintiff's home state has a greater interest in the litigation.

> The sole contact Pennsylvania maintains with this litigation is as the situs of [d]efendant's headquarters and principal place of business. Although [p]laintiffs attempt to expand the importance of this

7

>contact by asserting that all decisions regarding the marketing, testing, proposed labeling and distribution of Paxil were made in Pennsylvania, ***this argument is unavailing and, as noted above, has been repeatedly rejected by courts within this district***. The jurisdiction in which the drug was prescribed and ingested clearly maintains the strongest interest in applying its applicable law to regulate the sale, prescription and ingestion of pharmaceuticals within its borders.

*Knipe*, 583 F. Supp. 2d at 616 (emphasis supplied).

*Knipe* is part of a long line of decisions by this Court applying the laws of the state where a product was purchased and the injury occurred, rather than the laws of the state where the defendant was headquartered. *See e.g., Bearden v. Wyeth*, 482 F. Supp. 2d 614, 620–22 (E.D. Pa. 2006) (the state where plaintiff used the product had a greater interest than that of defendant's headquarters); *In re Tylenol (Acetaminophen) Mktg., Sales Practices and Prods. Liab. Litig.*, No. 2:12-cv-7263, 2015 WL 2417411, at *7 (E.D. Pa. May 20, 2015) (the contacts of the state in which the plaintiff purchased, consumed, and viewed marketing and warnings concerning the product outweighed the contacts of the states where defendant was headquartered); *Atkinson v. Luitpold Pharm., Inc.*, 414 F. Supp. 3d 742, 746 (E.D. Pa. 2019) (the "trend of the law" in the Eastern District and Third Circuit is to apply the law of the state in which the claim arose rather than apply Pennsylvania substantive law).

8

The result is the same irrespective of whether the laws of plaintiff's home state might operate to restrict or even flat-out eliminate any potential liability. In *Henderson v. Merck & Co. Inc.*, defendant manufacturer sought application of Michigan law, which provides immunity to drug manufacturers from civil liability for injuries related to medications that have been approved by the FDA. No. 2:04-cv-5987, 2005 WL 2600220, at *4 (E.D. Pa. Oct. 11, 2005). Plaintiff, a Michigan resident who was prescribed the defendant's drug in Michigan, purchased the drug in Michigan, and was treated for injuries in Michigan, sought the application of Pennsylvania, New York, New Jersey, or Delaware law, arguing that those states had an interest in imposing liability on in-state manufacturers of defective drugs. *Id*. at 3. This Court nonetheless applied the Michigan law and ultimately dismissed the plaintiff's claims, finding:

> [B]ecause plaintiff purchased, was prescribed, and ingested [the product] within Michigan's borders, and because plaintiff allegedly suffered injuries in Michigan, the interests of Pennsylvania, New York, and New Jersey in applying their product liability laws to such extraterritorial conduct lose vigor.

*Id*. at 8. The Court recognized that, by applying Michigan law, the plaintiff would be barred from recovery. But whether one state's laws might be more "plaintiff friendly" than another state's laws simply isn't a consideration in the choice-of-law analysis.

> Michigan [had] a strong interest in applying its law to ensure that Michigan residents, including plaintiff, are not burdened with excessively high payments for prescription drugs, indeed, that such drugs remain financially available for all Michigan citizens, even if that means immunizing non-resident pharmaceutical companies who do business in Michigan from product-related claims brought by a Michigan resident for injuries suffered in Michigan.

*Id*. at 7.

The Court echoed these themes in *Blain v. Smithkline Beecham Corp.*, rejecting the plaintiff's argument that Pennsylvania law should apply because the defendant conducted business in Pennsylvania and crafted the warnings for the subject product in Pennsylvania. 240 F.R.D. 179, 193–94 (E.D. Pa. 2007). Once again, the Court reiterated the bedrock principle that, in almost all cases where a plaintiff is injured by a product in his or her home state, the law of that state will govern any subsequent product-liability claim.

> A state's interest in fixing liability for tortious harm caused within its boundaries goes to its interests in protecting its citizens and regulating conduct there. Of course, Pennsylvania has an interest in regulating its citizens' labeling practices. When that conduct reaches and has consequences beyond the state's borders, it affects citizens of other states. ***When it does, the foreign state's interest in protecting its citizens outweighs Pennsylvania's regulatory concerns.***

*Id*. (emphasis supplied).

In a broad discussion of choice-of-law principles, the Third Circuit emphasized the importance of a company's decision to conduct business in a

particular state, finding that Indiana law applied in a case involving Pennsylvania-based Conrail.

> Having elected to transact business in Indiana and having exposed itself to a policy that fails to give rein to contribution, Conrail's rights must be governed by that determination. We cannot agree . . . that Pennsylvania law travels with Conrail wherever it runs.

*Shields*, 810 F.2d at 401.

Finally, product-liability precedent outside of the Third Circuit lends further support to this clear trend in favor of the application of the law of the state where the injury occurred. *See e.g.*, *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 947 (M.D. Tenn. 2013) *aff'd*, 786 F.3d 491 (6th Cir. 2015) (observing that courts "have uniformly concluded that the law of the plaintiff's place of injury applies, particularly where the place of injury is the same as the plaintiff's domicile"); *Howard v. Kerzner Int'l Ltd.*, No. 12-cv-22184, 2014 WL 714787, at *3 (S.D. Fla. Feb. 24, 2014) ("[a] survey of the Florida cases applying the 'most significant relationship' test suggests that the law of the state in which the injury occurred will almost always govern the issue in dispute"); *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990) ("Texas has a significant interest in remedying civil injury to Texas citizens through tort liability and also in defining the outer limits of tort liability.").

In the present case, the Subject Product was distributed in South Dakota, purchased in South Dakota, and gifted in South Dakota. The alleged injury occurred in South Dakota, and medical treatment was sought in South Dakota. And the relationship between Plaintiff and QVC is centered in South Dakota. *See Normann v. Johns–Manville Corp.*, 593 A.2d 890, 894 (Pa. Super. 1991) (noting that the relationship between the plaintiff and the defendant-manufacturer is centered where the plaintiff is exposed to the allegedly defective product); *Bearden*, 482 F. Supp. 2d at 620. The sole contact to this Commonwealth is QVC's headquarters in Pennsylvania, the significance of which this Court has routinely downplayed in analogous cases. *Knipe*, 583 F. Supp. 2d at 616. South Dakota's contacts to the litigation are not only numerous, but qualitatively paramount, as South Dakota maintains a fundamental interest in: (i) applying its own laws to injury claims of South Dakota citizens that occurred in South Dakota; (ii) governing the sale and distribution of allegedly defective products within its borders; and (iii) maintaining a careful balance between compensating persons claiming to have been injured by defective products and placing appropriate limitations on liability, including the application of its innocent-seller statute. A failure to apply South Dakota laws to this litigation would be a stark departure from the overwhelming precedent of this Court and Circuit, which has applied the law of the state where the incident occurred, as the qualitative interests a foreign state has in applying its own laws to conduct that

12

occurred within its borders, far outweigh any Pennsylvania interest derived solely a defendant's presence in this Commonwealth.

In prior filings, Plaintiff has suggested that the application of South Dakota law would somehow deprive Minor Plaintiff of a remedy, but that sort of rhetoric betrays a fundamental misunderstanding of what South Dakota's innocent-seller statute does and, more importantly, what it doesn't do. South Dakota law does not render retailers immune from suit. Instead, it merely requires a plaintiff to prove the retailer acted unreasonably. Put differently, South Dakota's innocent-seller statute eliminates strict liability and establishes a negligence standard for retailers like QVC. There is nothing nefarious about South Dakota's policy determination that retailers should be held liable only if they are shown to have breached a duty of care. Indeed, about 23 states have similar regimes. And there is certainly nothing unjust in applying a statute passed by the South Dakota legislature in a case brought by citizens of South Dakota involving a product purchased and used in South Dakota. Regardless, and as already established, whether the laws of Plaintiff's home state might operate to foreclose any recovery from QVC simply is not a factor in the choice-of-law analysis. *Henderson*, 2005 WL 2600220, at *4.

### C. Other District Courts Have Repeatedly Applied Innocent-Seller Statutes When Sitting in Diversity

Courts sitting in diversity routinely apply similar innocent-seller statutes of the state where the plaintiff's accident occurred, irrespective of where the lawsuit was filed or where the defendants were headquartered. *See, e.g., Wolford v. Boston Sci. Corp.*, No. 2:12-cv-835, 2015 WL 5838504, at *2 (S.D. W. Va. Oct. 5, 2015) (applying Florida's innocent-seller statute where plaintiff was a resident of Florida and had surgery in Florida); *Williams v. W. Enters., Inc.*, No. 5:05-cv-436, 2006 WL 8436169, at *2-3 (W.D. Okla. Oct. 27, 2006) (dismissing strict-liability and punitive-damages claims pursuant to Colorado's innocent-seller laws); *Hughes v. Med. Depot, Inc.*, No. 2:18-cv-2187, 2019 WL 1772401, at *2 (D.S.C. Apr. 23, 2019) (applying Georgia's innocent-seller statute after a choice-of-law analysis between Georgia, where the injury occurred, and South Carolina, because case did not fit within the public policy exception to South Carolina's doctrine of *lex loci deliciti*).

These decisions are part and parcel of the overall weight of the case law within this Circuit holding that the state where the product was purchased, and the incident occurred, has the most significant relationship to product-liability litigation.

## V.     CONCLUSION

The Subject Product was not designed or manufactured in Pennsylvania, nor were the warnings prepared here. Some or all of that occurred overseas and none had anything to do with QVC. The only connection between this case and Pennsylvania is the corporate presence of QVC, a retailer. Quite literally everything else having to do with this case occurred in South Dakota—including the decision to buy the product, the distribution of the product, the use of the product, the Minor Plaintiff's injuries, and his medical care. South Dakota, therefore, is where the relationship between Plaintiff and QVC is centered. *Normann*, 593 A.2d at 894; *Bearden*, 482 F. Supp. 2d at 620. This Court has held in no uncertain terms that the jurisdiction in which a product is purchased and used "***clearly maintains the strongest interest***" in applying its laws in a resultant product-liability action. *Knipe*, 583 F. Supp. 2d at 616 (emphasis supplied). Attempts to avoid the application of the law of the state where the injury occurred—by, for example, arguing that the state where the defendant is headquartered has a greater interest—have been "***repeatedly rejected by courts within this district***." *Id.* (emphasis supplied).

WHEREFORE, QVC respectfully moves this Court to apply the substantive law of Plaintiff's home state of South Dakota to the claims and defenses at issue in this product-liability action.

Dated: August 14, 2020   Respectfully submitted,

PIETRAGALLO GORDON ALFANO BOSICK
& RASPANTI, LLP

By: *s/ Clem C. Trischler*
Clem C. Trischler (*pro hac vice*)
Jason M. Reefer
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
412-263-1816 Telephone
412-263-4246 Facsimile
cct@pietragallo.com
jmr@pietragallo.com

*Counsel for QVC, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2020, I electronically filed the within document with the Clerk of Court using the CM/ECF system, thereby serving all counsel of record who have registered to receive CM/ECF notifications.

Thomas R. Kline, Esq.
Patrick Fitzgerald, Esq.
KLINE & SPECTER PC
1525 Locust Street, 19th Floor
Philadelphia, PA 19102

Brian Panish, Esq.
Adam Shea, Esq.
PANISH SHEA & BOYLE LLP
11111 Santa Monica Blvd., Suite 700
Los Angeles, CA 90025

David R. Shoop, Esq.
Thomas S. Alh, Esq.
SHOOP, A PROFESSIONAL LAW CORPORATION
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90210

*Counsel for Plaintiff*

Dated: August 14, 2020             */s/ Clem C. Trischler*
                                   Clem C. Trischler