## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | **CIVIL ACTION** |
| **EMILY TRIAS** | : | |
| *AS PARENT AND NATURAL* | : | |
| *GUARDIAN OF M.T., A MINOR*, | : | |
| *Plaintiff,* | : | |
| v. | : | **NO. 20-813** |
| | : | |
| **QVC, INC.** | : | |
| *Defendant.* | : | |

## MEMORANDUM

### I.    FACTUAL BACKGROUND

Emily Trias, as parent and natural guardian of M.T. ("Plaintiff"), a minor,

filed a complaint in the Court of Common Pleas of Philadelphia County against

Defendant QVC with causes of action for strict liability, negligence, and fraudulent

concealment.  *See generally* ECF No. 1-1.  Defendant removed the action to the

Eastern District of Pennsylvania based on diversity jurisdiction, as Plaintiff is a

South Dakota citizen and Defendant QVC is incorporated in Delaware and has a

principal place of business in Pennsylvania.  *Id*. at ¶¶ 1, 5.

In the Complaint, Plaintiff alleges that QVC sold and distributed a defective

trivet (the "product"), which contained small, high-powered magnets.  ECF No. 1-

1.  Plaintiff's grandmother purchased the trivets, which were part of a cookware

set, from QVC as a gift for Plaintiff's family.  *Id*. at ¶ 28.  When Plaintiff was two

1

and a half years old, Plaintiff ingested the magnets that were concealed within the trivets and suffered serious injuries as a result.  *Id*. at ¶ 30.  Plaintiff alleges that Plaintiff was injured as a direct and proximate result of the defective magnetic trivets and of Defendant QVC's failure to warn Plaintiff or his family that the powerful magnets inside the trivet could be easily accessed or removed by children.  *Id*. at ¶¶ 23, 25.  Plaintiff alleges causes of action against Defendant QVC related to QVC's "admitted sourcing, testing, advertisement, marketing, sale and distribution of the subject product."  ECF No. 47-2 at 2.  Before the Court are cross-motions for choice of law.  ECF Nos. 47, 48.  Plaintiff contends that Pennsylvania law should apply.  ECF No. 47.  Defendant QVC contends that South Dakota law should apply.  ECF No. 48.

## II.   <u>DISCUSSION</u>

### 1.   *Pennsylvania Choice of Law Rules*

"Because this is a diversity case, we apply the choice-of law-rules of the forum state, Pennsylvania."  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007).   Pennsylvania choice of law analysis consists of two parts.  *Id*. at 230.  "The first part of the choice of law inquiry is best understood as determining if there is an actual or real conflict between the potentially applicable laws."  *Id*.  "If there are relevant differences between the laws, then the court should examine the

governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Id.*

"A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991). "In such a situation, the court must apply the law of the state whose interests would be harmed if its law were not applied." *Id.*

"By contrast, there is a true conflict when the governmental interests of both jurisdictions would be impaired if their law were not applied." *Id.* at 187 n.15. *See also Hammersmith*, 480 F.3d at 230. "If a true conflict exists, the court must determine which state has the greater interest in the application of its law." *Id. See also Hammersmith*, 480 F.3d at 231.

"Finally, there are unprovided-for cases in which neither jurisdiction's interests would be impaired if its laws are not applied." *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005). "The principle of lex loci delicti, the law of the place of the wrong, supplies the substantive law to be applied in unprovided-for cases." *Id.*

2. *Relevant States' Laws*

The parties agree that there is a real conflict between the applicable law in South Dakota and Pennsylvania.  ECF No. 47-2 at 8 ("[A] conflict exists requiring application of Pennsylvania choice of law analysis."); ECF No. 48 at 8 ("A real conflict exists between the laws of South Dakota and Pennsylvania.")  Therefore, as there are "relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Hammersmith*, 480 F.3d at 226.

The relevant South Dakota law (the "Innocent Seller Statute") states:

> No cause of action based on the doctrine of strict liability in tort may be asserted or maintained against any distributor, wholesaler, dealer, or retail seller of a product which is alleged to contain or possess a latent defective condition unreasonably dangerous to the buyer, user, or consumer unless said distributor, wholesaler, dealer, or retail seller is also the manufacturer or assembler of said product or the maker of a component part of the final product, or unless said dealer, wholesaler, or retail seller knew, or, in the exercise of ordinary care, should have known, of the defective condition of the final product. Nothing in this section shall be construed to limit any other cause of action from being brought against any seller of a product.

SDCL § 20–9–9.

In contrast, the Pennsylvania Supreme Court has adopted the Restatement (Second) of Torts § 402A, and Pennsylvania law imposes strict liability on a seller of any product in a defective condition unreasonably dangerous to the user or

consumer. *Webb v. Zern*, 422 Pa. 424, 427 (1966); se*e also Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 381-82 (2014).

### 3. *False Conflict*

Plaintiff contends, first, that the conflict between the two applicable laws is false because applying South Dakota law "immunizing sellers of defective products would impair Pennsylvania's substantial interest in deterring the sale of defective products," whereas "applying Pennsylvania law would not impair South Dakota's interests."  ECF No. 47-2 at 8.   Plaintiff asserts that, "in enacting the Innocent Seller Statute, the South Dakota legislature sought to 'protect **South Dakota middlemen** who, although they do not participate in the creation of defects, must otherwise answer for injuries under section 402A.'"  *Id*. at 9 (citing *Avon Wynia v. Richard-Ewing Equipment Company, Inc.*, 17 F.3d 1084, 1088 (8th Cir. 1994) (citing Robert Dugan, *Reflections on South Dakota's Trifurcated Law of Products Liability*, 28 S.D.L. Rev. 259, 272 (1983))).  As QVC is not a South Dakota middleman, Plaintiff contends that "South Dakota has no interest in applying its statute to protect QVC," and therefore "a false conflict exists."  *Id*.

Plaintiff concludes that South Dakota has no interest in applying its Innocent Seller Statute to this case and application of this law would not further any South Dakota governmental policy.  *Id*. at 11.  Therefore, Plaintiff contends that "[c]onsidering Pennsylvania's strong governmental interest in applying its law in

this case, and the absence of impairment of South Dakota's interests or policy if Pennsylvania law applies, a 'false' conflict exists." *Id*. at 12.

Defendant contends that the conflict between Pennsylvania and South Dakota law is not a false conflict because each "state has a compelling interest in regulating the allocation of liability in cases involving the purchase and use of products within its borders." ECF No. 51 at 7 (citing *Henderson v. Merck & Co. Inc.*, No. 2:04-cv-5987, 2005 WL 2600220, at *4 (E.D. Pa. Oct. 11, 2005)). Furthermore, Defendant cites *Knipe v. SmithKline Beecham* to state that "differing rules as to liability or damages generally represent genuine conflicts since the laws covering these issues take into account both the needs of the injured plaintiffs and the economic viability of the defendants." 583 F. Supp. 2d 602, 614 (E.D. Pa. 2008).

Furthermore, Defendant notes that the quote cited by Plaintiff regarding South Dakota's Innocent Seller Statute protecting South Dakota middlemen in *Avon Wynia* was merely *dicta* and was not in the context of determining "whether South Dakota's innocent-seller statute applies to out-of-state distributors." ECF No. 51 at 8. Defendant asserts that the plain language of South Dakota's Innocent Seller Statute "applies, without qualification, to '***any*** distributor, wholesaler, dealer, or retail seller of a product'" and does not "distinguish between in-state and out-of-state sellers." *Id*. (quoting SDCL § 20-9-9). Defendant further notes that

6

courts, including the Eighth Circuit, have not limited the statute's application to in-state sellers. *Id.* at 9 (citing *Lindholm v. BMW of N.A., LLC*, 862 F.3d 648, 652–53 (8th Cir. 2017); *McAllister-Lewis v. Goodyear Dunlop Tires N.A., Ltd.*, CV 14-4103, 2017 WL 2312232, at *2 (D.S.D. May 24, 2017)).

Defendant contends that "where the place where the injury occurred was not fortuitous, as for example, in an airplane crash, the place of injury assumes much greater importance, and in some instances may be determinative." ECF No. 51 at 9 (quoting *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 401 (3d Cir. 1987)). Defendant contends that Plaintiff's home state maintains a strong "'interest in protecting its citizens from "pass-on" costs,' which is also the prime motivation behind innocent-seller statutes like South Dakota's." *Id.* (quoting *Henderson*, 2005 WL 2600220, at *7–11).

Finally, Defendant contends that "[b]oth South Dakota and Pennsylvania have crafted product-liability schemes to compensate residents injured by defective products and to regulate the conduct of manufacturers and distributors within the state." ECF No. 48 at 8-9 (citing *Peterson v. Safway Steel Scaffolds Co.*, 400 N.W.2d 909, 915 (S.D. 1987); *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 201 (E.D. Pa. 2008)). Therefore, Defendant contends, "each state has an interest in the application of its particular laws and a true conflict exists." *Id.* (citing *Torres v. Lucca's Bakery*, 487 F. Supp. 2d 507, 513 (D.N.J. 2007)).

7

The Third Circuit has held that "[a] false conflict exists where 'only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996) (quoting *Lacey*, 932 F.2d at 187). Furthermore, "[u]nder Pennsylvania choice of law analysis, a false conflict exists 'where the accident is fortuitous and the state where the accident occurred has no interest in the regulatory standard at issue.'" *Id*. at 1071–72 (quoting *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 170 (3d Cir.1980), rev'd on other grounds, 454 U.S. 235 (1981)) (citing *Kuchinic v. McCrory*, 422 Pa. 620, 624 (1966)).

In *LeJeune*, the Third Circuit conducted a choice of law analysis to determine whether Delaware or Pennsylvania law applied to a negligence and strict products liability action. *Id*. The plaintiff, a Pennsylvania resident, was injured while working on a piece of machinery at a steel mill in Delaware that the defendant had repaired. *Id*. at 1071. The defendant had conducted its repair work in Pennsylvania and Ohio. *Id*. The Court determined that no false conflict existed because both Pennsylvania law, which recognizes strict products liability, and Delaware law, which does not recognize strict products liability, would be impaired by the application of the other jurisdiction's law. *Id*. at 1071. The Third Circuit held that applying Delaware law would "impair Pennsylvania's interest in protecting its citizen," Plaintiff, but also that "Delaware's interests would be

8

impaired if Pennsylvania law were applied" since "Delaware has an interest in prescribing the rules governing torts occurring nonfortuitously within its borders." *Id*.

The Third Circuit further held that the "occurrence of the accident in Delaware was not fortuitous" as "Delaware was the site of the accident . . . because of the steel mill's fixed location in that state." *Id*. at 1072. The Third Circuit held that "Delaware's interest in regulating purposeful economic activity within its borders would be impaired" if Pennsylvania law were applied. *Id*. The Third Circuit continued, a "state's interest in enforcing its tort law is not constrained to protecting residents from harm or suit," and a "state could have a host of reasons for limiting liability, including encouraging economic activity in the state . . . and lowering costs to consumers." *Id*.

First, South Dakota similarly "has an interest in prescribing the rules governing torts occurring nonfortuitously within its borders." *LeJeune*, 85 F.3d at 1071. In this case, the occurrence of Plaintiff's accident in South Dakota was not fortuitous because Plaintiff and his family were residents of South Dakota at the time of the accident and Plaintiff's family was using the product in South Dakota. ECF No. 1-1 at ¶¶ 28-30.

Further applying the analysis of the Third Circuit in *LeJeune*, South Dakota's "interest in enforcing its tort law is not constrained to protecting residents from harm or suit," and South Dakota's "interest in regulating purposeful economic activity within its borders would be impaired" if Pennsylvania law were applied. *LeJeune*, 85 F.3d at 1072.[1]  Similarly, Pennsylvania has an interest in regulating businesses located in its state and therefore Pennsylvania's governmental interests would be impaired by the application of South Dakota law.

Therefore, because both jurisdictions' governmental interests would be impaired by the application of the other jurisdiction's law, the accident was not fortuitous, and because both South Dakota and Pennsylvania have an interest in the regulatory standard at issue, a false conflict does not exist in this case.  For these same reasons, this case is also not one that is "unprovided-for."  *Hammersmith*, 480 F.3d at 230 ("An 'unprovided-for' case is one in which neither state's interests would be impaired if its laws were not applied.").  As both jurisdictions' interests would be impaired by application of the other's laws, a true conflict exists.

---

[1] The cases cited by Plaintiff to support the existence of a false conflict are distinguishable.  ECF No. 47-2 at 9-10; *see Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 188 n.19 (3d Cir. 1991) (failing to "formally decid[e] the choice of law issue" in a products liability suit stemming from airplane crash); *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir. 1980) reversed on other grounds, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) (wrongful death action stemming from airplane crash); *Reise v. QVC, Inc.*, 1998 WL 151026, at *3 (E.D. Pa. Mar. 31, 1998) (applying California's choice of law rules); *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 221 (3d Cir. 2005) (conducing a choice of law analysis relating to motor vehicle laws).

4. *True Conflict*

As a true conflict exists, the Court must examine whether Pennsylvania or South Dakota has a greater interest in the application of its law. *LeJeune*, 85 F.3d at 1071. "In making this determination," the Court must "look 'to see what contacts each state has with the accident, the contacts being relevant only if they relate to the policies and interest underlying the particular issue before the court.'" *Id*. at 1072 (quoting *Cipolla v. Shaposka*, 439 Pa. 563, 566 (1970)) (internal citations omitted).

In conducting this analysis, the Court must combine the "approaches of both [the] Restatement II (contacts established significant relationships) and interest analysis (qualitative appraisal of the relevant States' policies with respect to the controversy)." *Hammersmith*, 480 F.3d at 231 (alteration in original) (quoting *Melville v. Am. Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)) (internal citations omitted). Courts look to the factors enumerated in § 145 of the Restatement (Second) of Conflicts, including: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971); *see Shields*, 810 F.2d at 400. However, "[t]he weight of a particular state's contacts must be

11

measured on a qualitative rather than quantitative scale." *LeJeune*, 85 F.3d at 1072 (quoting *Cipolla*, 439 Pa. at 566).

Plaintiff contends that, even if there is a true conflict between Pennsylvania and South Dakota law, "Pennsylvania still has the most significant relationship to the parties and occurrence requiring its application." ECF No. 47-2 at 11. In evaluating the relevant factors, Plaintiff contends that (1) the injury occurred in South Dakota, (2) the "conduct causing injury occurred in West Chester, Pennsylvania," (3) Plaintiff resides in South Dakota and Defendant's principal place of business and headquarters are located in Pennsylvania, and (4) the "relationship, if any, of the parties is centered in Pennsylvania given that West Chester, Pennsylvania is the place where the events causing Plaintiff's injury occurred." *Id*. at 12.

Plaintiff contends that "Pennsylvania's contacts are more substantial with regard to the injury producing conduct," because this location is where QVC personnel decided whether to sell the product, were involved in safety and quality control meetings about the product, had knowledge regarding the packaging, labelling, and warnings of the product, as well as knowledge of the research and testing of the product, among other activities. *Id*. at 12-13.

Plaintiff further contends that "[i]f the place of injury 'bears little relation to the occurrence and the parties with respect to the particular issue,' then the place of injury 'will not play an important role in the selection of the state of the applicable law.'" *Id*. at 13 (quoting Restatement (Second) of Conflicts of Law Sec. 145, Cmt. e.).   Although the accident took place in South Dakota, Plaintiff contends that the "conduct upon which QVC's liability is based occurred entirely in Pennsylvania." *Id*.  To support this conclusion, Plaintiff cites *Kelly v. Ford Motor Co.*, 933 F.Supp. 465 (E.D. Pa. 1996) and *Daniel v. Wyeth Pharms., Inc.*, 15 A.3d 909 (Pa. Super. 2011), where, in both cases, the court applied the law from the manufacturer's state to a claim for punitive damages.  ECF No. 47-2 at 14.

Plaintiff further notes, "[t]here are numerous cases in which the issue of choice of law was not decided based solely upon the location of the injury." *Id*. at 14 (citing *De Grasse v. Sensenich Corp.*, 1989 WL 23775 (E.D. Pa. 1989) (involving products liability claim arising from crash of airplane)).  Plaintiff concludes that "this proceeding is one in which the Defendant's conduct took place in Pennsylvania and the place of injury was unrelated to such conduct," and, therefore, the Court should apply Pennsylvania law.  *Id*. at 15.

Defendant responds that the "location where a product-liability plaintiff was injured is afforded substantial weight in the choice-of-law analysis unless the place of the accident is considered 'fortuitous,' such as with a plane crash."  ECF No. 48

at 10 (citing *Shields*, 810 F.2d at 401). Defendant contends that where the location

of the accident and the plaintiff's domicile are the same, "courts have almost

universally held that the law of plaintiff's home state will apply to the underlying

claims." *Id*. Defendant contends that courts in the Eastern District of

Pennsylvania, in "a long line of decisions," have applied the "laws of the state

where a product was purchased and the injury occurred, rather than the laws of the

state where the defendant was headquartered." *Id*. (collecting cases). To support

this conclusion, Defendant cites, among other cases, *Knipe*, a products liability

action against the manufacturer of a drug, where the court determined that New

Jersey law "maintain[ed] substantively greater contacts with" the dispute. 583 F.

Supp. 2d at 615-616. The court reached this conclusion because the deceased

Plaintiff was a resident of New Jersey who was prescribed the drug at issue in New

Jersey and who committed suicide in New Jersey, whereas the "sole contact

Pennsylvania maintain[ed] with this litigation [was] as the situs of Defendant's

headquarters and principal place of business." *Id*. The court found that "[t]he

mere fact that defendant resides in Pennsylvania and conducts some business there

simply does not outweigh New Jersey's dual interests of protecting its citizens and

regulating business conduct occurring within its borders." *Id*. at 616.

Defendant contends that, similarly, the "the Subject Product was distributed

in South Dakota, purchased in South Dakota, and gifted in South Dakota," "[t]he

14

alleged injury occurred in South Dakota, and medical treatment was sought in South Dakota," and "the relationship between Plaintiff and QVC is centered in South Dakota."  ECF No. 48 at 15.  Defendant further notes that, as in *Knipe*, the sole contact that this matter has to Pennsylvania is that QVC's headquarters are in Pennsylvania.  *Id*.  Defendant further contends that South Dakota's interests are not only numerous but also qualitatively paramount.  *Id*.

Plaintiff responds that Pennsylvania is the place where the conduct causing the injury occurred and, therefore, the location of the injury is not important to Plaintiff's claim.  ECF No. 50 at 6.  Plaintiff notes that Plaintiff conducted depositions of two of QVC's 30(b)(6) witnesses, who testified that QVC conducted a number of activities related to the product at their headquarters in Pennsylvania, including: QVC's decision to purchase and sell the product, QVC's review of the warnings that came with the product, QVC's Quality Assurance Department's performance of the safety evaluation of the product, QVC's production of 22 commercials for the product, among others.  *Id*. at 6-7.  Plaintiff contends that these "activities establish the extent of QVC's conduct in Pennsylvania with respect to the subject trivets," and therefore weigh heavily towards applying Pennsylvania law.  *Id*.

Defendant responds that courts have "routinely recognized the paramount importance of the location where the injury occurred . . . even in cases where there

15

would be **no** physical evidence from the site of the alleged accident."  ECF No. 51 at 12.   Defendant contends that courts in this district have "consistently applied the law of the plaintiff's home state—even in cases where the defendant's allegedly tortious conduct occurred in this Commonwealth."  *Id*. (emphasis omitted) (collecting cases).

 In support, Defendant cites *Bearden v. Wyeth*, where the court found that "Arkansas has a greater interest in applying its laws to protect and provide redress for a citizen who was prescribed a drug, received any relevant representations or warnings about it, purchased it, ingested it, and was injured by it—all within his home state of Arkansas," even where one of the defendants maintained a principal place of business in Pennsylvania and conducted many of the activities concerning the relevant drug there.  482 F. Supp. 2d 614, 620–22 (E.D. Pa. 2006).

Defendant further cites *Atkinson v. Luitpold Pharm., Inc.*, where the court "agree[d] with the trend of the law in this District and Circuit . . . to apply the law of the state in which the claim arose rather than apply Pennsylvania substantive law" especially where the site of the accident was not fortuitous. 414 F. Supp. 3d 742, 746 (E.D. Pa. 2019).

Plaintiff responds that the cases cited by Defendant are distinguishable because they involved plaintiffs that ingested a drug, generally over a period of

16

time, in their home state, and therefore the "injury causing event and the systematic contacts with the home state were continuous and ongoing unlike the injury to Plaintiff." ECF No. 50 at 3. To support Plaintiff's contention that Pennsylvania has a greater interest in and connection to the claims asserted than South Dakota, Plaintiff cites two cases, *Kelly*, 933 F.Supp. 465 (E.D. Pa. 1996) and *Daniel*, 15 A.3d 909 (Pa. Super. 2011), in which a district court in the Eastern District of Pennsylvania and a Pennsylvania Superior Court, respectively, found Pennsylvania law applied in similar circumstances. ECF No. 47-2 at 14. These cases are not persuasive here, however, because each court conducted a choice of law analysis specifically related to the law of punitive damages. *See Kelly*, 933 F. Supp. at 469 (determining "the scope of a defendant's punitive conduct in regard to the contacts analysis for choice of law on a punitive damages claim."); *Daniel*, 15 A.3d 909, 935 n.17 (2011) (conducting "a choice of law analysis on the availability of punitive damages."). "Because choice of law analysis is issue specific, different states' laws may apply to different issues in a single case." *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir.2006)). As the Court in this matter is focused on a choice of law analysis related to each state's strict products liability laws, and not their punitive damages laws, these cases are inapposite.

The Court concludes that South Dakota law applies to this matter. First, both parties agree that the place where the injury occurred is South Dakota. ECF

17

No. 47-2 at 12; ECF No. 48 at 15.  Furthermore, Plaintiff and his mother are South Dakota residents, the product was used at Plaintiff's family's home in South Dakota, and the product caused injury in South Dakota.  ECF No. 1-1 at ¶¶ 1, 28, 29, 30.  Therefore, it was not fortuitous that the injury occurred in South Dakota. *See LeJeune*, 85 F.3d at 1072.

Next, the Court finds that the place where the conduct causing the injury occurred is Pennsylvania.  Defendant conducted a number of allegedly tortious conduct in Pennsylvania related to the product at issue.  These activities include QVC's decision to purchase the product, review of the warnings that came with the product, safety evaluation of the product, and production of multiple commercials for the product, which all took place at Defendant's headquarters in Pennsylvania. ECF No. 50 at 7-8.

Regarding the domicile, residence, nationality, place of incorporation and place of business of the parties, Plaintiff is a resident of South Dakota and Defendant QVC is a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.  ECF No. 1 at ¶ 6; ECF No. 1-1 at ¶ 5. Therefore, this factor is neutral.

Finally, the Court finds that there was no relationship between the parties, as Plaintiff's grandmother, not Plaintiff nor his parents, purchased the product from

QVC.  ECF No. 1-1 at ¶ 28.  Neither Plaintiff nor his parents ever came into

contact with QVC to obtain the product; they received the product as a gift.  *Id.*

Therefore, the Court finds this factor is neutral.[2]

Looking at these contacts qualitatively, the Court finds that South Dakota

maintains substantively greater contacts with this action and therefore has a greater

interest in having its law applied.  As the Court has concluded that the site of the

accident was not fortuitous, the place of Plaintiff's injury assumes much greater

importance.  *See LeJeune*, 85 F.3d at 1072 (quoting *Shields*, 810 F.2d at 401).

Furthermore, Plaintiff resided in South Dakota at the time of the accident, his

family used the product in South Dakota, and he was treated for his injuries in

South Dakota.  ECF No. 1-1 ¶¶ 1, 28-36.  While the Court recognizes that

Defendant is headquartered in Pennsylvania and conducted several activities in

Pennsylvania related to its marketing and testing of the product, this does not

outweigh South Dakota's numerous and substantive contacts with this action.  *See*

*Knipe*, 583 F. Supp. 2d at 616 ("Although Plaintiffs attempt to expand the

importance of [Defendant's headquarters] by asserting that all decisions regarding

---

[2] Defendant stated, and Plaintiff did not dispute, that the product was also purchased in South Dakota and gifted in South Dakota.  ECF No. 51 at 15.  This would indicate that the relationship between the parties was centered in South Dakota, because that is where the product left QVC's hands and entered the purchaser's hands and where Plaintiff received the product. However, Plaintiff did not make these specific allegations in the Complaint nor did Defendant provide any support for these statements.  Therefore, as the Court has independently found that South Dakota law applies, this does not alter the Court's conclusion or analysis.

the marketing, testing, proposed labeling and distribution of Paxil were made in Pennsylvania, this argument is unavailing and . . . has been repeatedly rejected by courts within this district.").

As the Court has found that South Dakota has a greater interest in the application of its laws, the Court finds that South Dakota law applies to the strict products liability claim.[3]  *See LeJeune*, 85 F.3d at 1072.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Defendant's Motion to Establish Choice of Law and will deny Plaintiff's Motion for Choice of Law and the Application of Pennsylvania Law.  An appropriate order will follow.

**BY THE COURT:**

**DATED: <u>October 29, 2020</u>**          **<u>/s/ Chad F. Kenney</u>**

**CHAD F. KENNEY, JUDGE**

---

[3] Plaintiff also contended that QVC should be barred from arguing for the application of South Dakota law because QVC's general terms and conditions require the application of Pennsylvania law.  ECF No. 47-2 at 4-5.  This argument, however, is irrelevant because "Plaintiff agree[d] that the Terms and Conditions do not apply to the parties in this proceeding." ECF No. 52 at 1-2.  At oral argument, Plaintiff's counsel did not contend that QVC should be *barred* from arguing for application of South Dakota law, but instead stated, "[t]he bottom line . . . is QVC has at least *taken an inconsistent position* with regard to the application of law in this case."  Oral Arg. Tr., 2:20-21 (emphasis added).  As Plaintiff has admitted that QVC's terms and conditions do not apply to the parties in this case, the Court is not persuaded that QVC's "inconsistent position" regarding application of Pennsylvania law bears on the choice of law decision before this Court.  Therefore, the Court will not further consider this argument.